**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **EQHEALTH ADVISEWELL, INC.**<br>**F/K/A EQHEALTH SOLUTIONS, INC.** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 22-50-BAJ-EWD** |
| **HOMELAND INSURANCE COMPANY**<br>**OF NEW YORK** | |

**RULING AND ORDER**

Before the Court is the Motion to Compel Responses to Requests for Production ("Motion to Compel"), filed by Plaintiff eQHealth AdviseWell, Inc. ("Plaintiff"). The Motion to Compel is opposed by Defendant Homeland Insurance Company of New York ("Homeland").[1] The information sought, related to loss reserve information as to the claim asserted by Plaintiff, is relevant to Plaintiff's bad faith claims in this case. However, because Homeland's privilege log and the Declaration of Linda Unger are insufficient, Homeland will be ordered to provide a revised privilege log that complies with Local Civil Rule 26(c). The Motion to Compel will be terminated to permit further discussions among the parties regarding the withheld reserve information after a revised privilege log is provided. Additionally, Homeland's Motion for Leave to File Sur-Reply ("Motion for Leave") will be denied.[2]

**I. BACKGROUND**

On July 28, 2022, a telephone conference was held with the parties to discuss three motions to compel discovery requests propounded by Plaintiff on Homeland.[3] After the guidance provided, Plaintiff voluntarily withdrew its motion to compel responses to requests for admissions, and the

---

[1] R. Docs. 54, 75 and *see* Reply at R. Doc. 78.
[2] R. Doc. 87.
[3] *See* R. Doc. 70.

parties resolved all the issues raised in the other two motions to compel, except for Plaintiff's Request

for Production ("RFP") No. 20, which seeks "All documents reflecting your loss reserve for the

present claim."[4]  In its supplemental and amended objections and responses, Homeland objected to

RFP No. 20 on the grounds that:

> "[RFP No. 20 is] irrelevant and not reasonably calculated to lead to
> the discovery of admissible evidence as the law is clear that an
> insurer's reserve estimate does not represent an undisputed amount
> to be paid by an insurer, reserves are highly speculative and
> unreliable, and often include information protected by privilege.
> Homeland further objects to Request for Production No. 20 to the
> extent it seeks production of information that is not required to be
> produced pursuant to the attorney-client privilege, [or] the work
> product doctrine…."[5]

Homeland produced a privilege log.  According to Homeland, the last log entry corresponds to the

documents withheld in response to RFP No. 20.[6]

## II.   LAW AND ANALYSIS

### A.  Applicable Legal Standards

Under Rule 26 of the Federal Rules of Civil Procedure, parties may obtain discovery

regarding any nonprivileged matter that is relevant to a claim or defense[7] and proportional to the

needs of the case, considering the importance of the issues at stake in the action, the amount in

controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[4] R. Doc. 75-5, p. 20.

[5] R. Doc. 75-5, p. 20.  Homeland's response to RFP No. 20, reproduced in the Motion to Compel at R. Doc. 54-1, p. 21, was Homeland's original response, which contained an objection as to vagueness that Homeland later withdrew. Homeland also originally objected to RFP No. 20 on the ground that the information sought was confidential and proprietary; however, as Homeland notes, this objection has been mooted by the entry of a joint protective order agreed to by the parties. R. Docs. 75, p. 4 and R. Doc. 86.

[6] R. Doc. 75-6.

[7] *Crosby v. Louisiana Health Service and Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011) ("Generally, the scope of discovery is broad and permits the discovery of 'any nonprivileged matter that is relevant to any party's claim or defense.'"), citing Fed. R. Civ. P. 26(b)(1) and *Wyatt v. Kaplan,* 686 F.2d 276, 283 (5th Cir. 1982).

proposed discovery outweighs its likely benefit.[8]   "For purposes of discovery, relevancy is construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party."[9] "It is well settled law that magistrate judges are afforded broad discretion in ruling on discovery matters."[10]

### B.   The Loss Reserve Information is Relevant to Plaintiff's Bad Faith Claim

Plaintiff has alleged that Homeland wrongfully denied coverage over a claim asserted by Plaintiff under the parties' insurance contract.  Plaintiff also asserts that Homeland engaged in bad faith under Louisiana law when it denied coverage.[11]   Plaintiff asserts that the loss reserve information sought in RFP No. 20 is relevant because the loss reserves contain Homeland's opinion regarding its potential liability in the case, which is dependent on whether coverage exists—an issue in this case.  Plaintiff also asserts that loss reserves are relevant to Homeland's bad faith in denying coverage and may lead to the discovery of admissible evidence regarding the thoroughness of Homeland's investigation and consideration of Plaintiff's claim.[12] According to Plaintiff, loss reserves "could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage."[13]

Homeland contends that the production of loss reserves will not lead to the discovery of admissible evidence because reserves are based on opinion, which may be speculative.[14]  Relying

---

[8] Fed. R. Civ. P. 26(b)(1).

[9] *Chisum v. Mercedes-Benz USA, LLC,* 534 F.Supp.3d 608, 614 (M.D. La. 2021).

[10] *Albemarle Corp. v. Chemtura Corp.,* No. 05-1239, 2008 WL 11351528, at *1 (M.D. La. Apr. 22, 2008), citing *Merritt v. International Bro. of Boilermakers*, 649 F.2d 1013 (5th Cir. 1981).

[11] *See* R. Doc. 31 regarding Plaintiff's claims, and in particular, p. 9 (alleging bad faith).

[12] R. Doc. 54-1, p. 22, citing *Culbertson v. Shelter Mutual Insurance Co*., No. 97-1609, 1998 WL 743592 (E.D. La. Oct. 21, 1998) and R. Doc. 78.

[13] R. Doc. 78, p. 2, citing *Trinity East Energy, LLC v. St. Paul Surplus Lines Ins. Co*., No. 11-814, 2013 WL 12124022, at *2 (N.D. Tex. Mar. 8, 2013) (quotation marks and citation omitted) and *see id.*, citing *Alta Vista Productions, LLC v. St. Paul Fire & Marine Ins. Co.,* No. CIV.A. 10-1948, 2011 WL 3290395, at *2 (E.D. La. Aug. 1, 2011) ("The setting of reserves bears some relationship to the insurer's calculation of potential liability, and have been found to be discoverable when bad faith is asserted"), quoting *Brothers Petroleum, LLC v. Underwriters at Lloyd's London,* 2008 WL 11509278, *2 (E.D. La. July 2, 2008).

[14] R. Doc. 75, p. 5.

on several out-of-Circuit cases, Homeland further argues that production of reserves has been denied in contested coverage cases because reserves have been found not constitute an admission of coverage or liability.[15]  As to bad faith, Homeland contends that Plaintiff has not shown how the setting of loss reserves is probative of its bad faith claim, and that while reserve information is subject to production in cases involving disputes as to the amount of the claim or the failure to settle, it is not warranted in denial of coverage cases.[16]  Homeland additionally argues that loss reserve information is validly withheld because it is routinely held inadmissible at trial due to prejudice and/or jury confusion.[17]  Finally, Homeland says that the loss reserve information is protected by the work product privilege.[18]

There is a split in authority regarding the production of loss reserve information in bad faith cases.[19]  In this case, the loss reserve information sought, which is tailored to "the present claim," is narrowly drawn and, despite involving a denial of coverage, is relevant to Plaintiff's bad faith claim.[20]  While Homeland argues the reserve information is irrelevant to an alleged bad faith denial of coverage, "[t]he court disagrees that such a decision is compelled."[21]  Discovery is broad, and information regarding the setting of the loss reserves could lead to admissible evidence regarding

---

[15] R. Doc. 75, pp. 6-7 (citations omitted).

[16] R. Doc. 75, pp. 8-9, citing *Pain Clinic, Inc. v. Bankers Ins. Co*., No. 06-4572, 2007 WL 9780346 (E.D. La. Mar. 19, 2007)) (other citations omitted). Homeland asserts: "[i]nsofar as the setting of reserves are not indicative of the existence of coverage in the first place, by the same token, they cannot be used to indirectly infer that coverage exists and that Homeland's denial of coverage was unjustified and without reasonable or probable cause or excuse on the basis of their existence." *Id.*

[17] R. Doc. 75, pp. 9-10.

[18] R. Doc. 75, pp. 10-11.

[19] *See, e.g., Pain Clinic, Inc.,* 2007 WL 9780346, at *3 and *Culbertson,* 1998 WL 743592, at *1. *Culbertson* notes that the withholding defendant did not assert privilege, and *Pain Clinic* distinguishes authority based on whether privilege was asserted.  In this case, privilege was asserted, as addressed below.

[20] *See, e.g.*, *Hidden Cove Park and Marina v. Lexington Ins. Co.,* No. 17- 193, 2017 WL 2444852, at *2 (E.D. Tex. June 6, 2017) ("The Court finds the claim notes regarding loss reserve are relevant to Plaintiffs' claims. 'In cases involving alleged bad faith on the part of the insurer in denying coverage, the amount of the loss reserve set by the insurer may be relevant because it could well belie a later claim that the insurer thought in good faith that there was no possibility of the claim falling within coverage.'"), citing *Trinity E. Energy, LLC,* 2013 WL 12124022, at *2) (citations omitted).

[21] *Krantz v. State Farm Fire and Cas. Co.,* No. 15-56, 2016 WL 320148, at **7-8 (M.D. La. Jan. 25, 2016) (finding the setting of loss reserve information relevant in a bad faith case after noting a split in the authority).

Homeland's state of mind in making its initial coverage and handling decisions.[22]  Further, whether or not the loss information is admissible at trial has no bearing on its discoverability under Rule 26.[23] As this matter is a first-party suit by an insured against its insurer on an alleged bad faith claim, "the production of the documents relating to the loss reserves is within the scope of discovery, and is relevant to this matter."[24]  Therefore, the reserve information is subject to production, unless a privilege applies.

### C.  Homeland Must Provide a Compliant Privilege Log

Homeland argues that "The reserves pertinent to the instant coverage dispute are based upon counsel's estimate of anticipated legal expenses, settlement value, length of time to resolve the litigation, geographic considerations and other factors," and therefore the loss reserve information is privileged from production as attorney work product under Rule 26(b)(3) because it contains the mental impression of its attorney and was prepared in anticipation of litigation.[25]  In support, Homeland relies on the Declaration of Linda Unger ("Unger,") a consultant of The MedPro Group,

---

[22] Because the reserve information is relevant to Plaintiff's bad faith claim, the other relevancy arguments are not addressed.  Furthermore, the view of one division of the Eastern District of Louisiana in *Pain Clinic Inc.* on the relevancy of the reserve information is not controlling on this Court.  Additionally, a subsequent case from the same court noted that *Pain Clinic's* view "is in the minority in the Eastern District of Louisiana." *See Meador v. Starr Indem. & Liab. Co.,* No. 19-2378, 2020 WL 8256370, at *3 (E.D. La. Sept. 1, 2020). That said, *Pain Clinic, Inc.* distinguished a case which found that "reserve information was relevant and discoverable on the issue of when the insurer had received notice of the underlying claims because the insurer's defense was that it did not receive timely notice of the claims," which was not an issue in *Pain Clinic, Inc.*, 2007 WL 9780346 at *3 (distinguishing *American Medical Systems, Inc. v. National Union Fire Ins. Co.*, No. 98-1788, 1999 WL 781495, at *3 (E.D. La. Sept. 29, 1999)).  However, the adequacy of the notice given by Plaintiff and whether it triggered coverage appears to be an issue in this case, further supporting a finding of relevancy. *See* R. Doc. 31, pp. 6-8.

[23] "Put differently, '[t]he test is not whether the information is admissible at trial, but whether it appears reasonably calculated to lead to the discovery of admissible evidence. Thus, as long as the information may lead to admissible evidence, it is discoverable.'" *Chisum*, 534 F. Supp. 3d at 614, citing *Exxon Chemical Patents, Inc. v. Lubrizol Corp.*, 131 F.R.D. 668, 672 (S.D. Tex. 1990). Thus, the fact that the *Culbertson* court ultimately denied admission of the loss reserve information at trial did not preclude discovery of the information in the first place.  R. Doc. 75, p. 9, citing *Shelter Mut. Ins. Co. v. Culbertson's Ltd., Inc.*, No. 97-1609, 1999 WL 539520, *4 (E.D. La. July 23, 1999).

[24] *Estate of Christman v. Liberty Mut. Ins. Co.*, No. 20-739, 2021 WL 2325330, at *5 (M.D. La. June 7, 2021)*,* citing *Harris Chevrolet, Inc. v. Hanover Ins. Co.*, No. 06-849, 2008 WL 11351443, at *3 (M.D. La. Feb. 28, 2008) and *see* Fed. R. Civ. P. 26(b)(1): "Parties may obtain discovery regarding *any nonprivileged matter that is relevant* to any party's claim or defense and proportional to the needs of the case…." (emphasis added).

[25] R. Doc. 75, pp. 10-11.  The log asserts both attorney-client and work product privileges; however, Homeland urges only the latter in brief. *Compare* R. Doc. 75-6, p. 5 *with* R. Doc. 75, pp. 10-11.

who claims to have knowledge of the reserve information. Unger attests, under penalty of perjury, that Homeland retained counsel on September 14, 2020, and generally verifies Homeland's position that the setting of the reserves was based on advice of counsel.[26]  Plaintiff argues that the Declaration fails to support the privilege because it does not adequately establish Unger's personal knowledge of her statements, nor does it identify The MedPro Group or its relationship with Homeland.[27] Plaintiff also contends that the log lacks sufficient descriptions, including which log entries supposedly relate to the loss reserves, and lacks any indication that Homeland's counsel discussed loss reserves with Homeland.[28]  Finally, Plaintiff argues that, because it first contacted Homeland regarding its claim in May 2019, but the log entries (and the Declaration) indicate that the first involvement of counsel was on September 14, 2020,[29] Homeland cannot claim work product privilege over loss reserves information predating the involvement of counsel.[30]  In response to Plaintiff's challenge to the Declaration, Homeland filed a Motion for Leave to File a Sur-Reply, to address The Med Pro Group's relationship to Homeland.[31]  Homeland's Motion for Leave will be denied. Sur-replies are disfavored. Additionally, the information the Sur-Reply seeks to supply regarding Unger's role and the relationship between The Med Pro Group and Homeland should have been contained in Unger's Declaration.

Pursuant to Fed. R. Civ. P. 26(b)(3)(A), "[o]rdinarily, a party may not discover documents and tangible things that are *prepared in anticipation of litigation* or for trial by or for another party

---

[26] R. Doc. 75-10. *See id.* at paragraph 4 ("Homeland has set its reserves for the instant dispute based upon and with consideration of counsel's advice, including estimated legal expenses to resolve pre-suit, the cost to litigate, the potential settlement value on a cost of defense basis and to avoid risk and inherent uncertainty of ongoing litigation, including considerations of the length of time it may take to resolve through litigation as well as geographic considerations impacting the costs and potential resolution.").

[27] R. Doc. 78, pp. 6-8.

[28] R. Doc. 78, pp. 8-9.

[29] R. Doc. 75-6, p. 1, entry 1, Bates No. HOMELAND_PRIV_000001-2, 9/14/12020, "Retention of Counsel."

[30] R. Doc. 78, p. 9.

[31] R. Docs. 87 and 87-1.

*or its representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)"[32] However, such materials may be discovered if "(i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."[33] "The party who is seeking the protection of the work-product doctrine has the burden of proving that the documents were prepared in anticipation of litigation."[34] "It is not dispositive that some documents were not prepared by attorneys. Rule 26(b)(3) protects from discovery documents prepared by a party's agent, as long as they are prepared in anticipation of litigation."[35] However, "[t]he work-product doctrine does not protect materials assembled in the ordinary course of business, pursuant to regulatory requirements, or for other non-litigation purposes."[36]

While not clear from the log, Homeland's opposition memorandum states that the applicable privilege log entry is the last one, HOMELAND_PRIV_000398-410, which identifies the type of document withheld as "Notes" dated "9/14/2021-6/14/2022," described as consisting of "Legal advice and strategy," with authors "Ginger Troy/Linda Unger" and no recipients.[37] Two issues must be addressed regarding Homeland's claim of work product privilege: loss reserve information before

---

[32] Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).

[33] *Id.*

[34] *Firefighters' Retirement System v. Citco Group Limited,* No. 13-373, 2018 WL 326504, at *4 (M.D. La. Jan. 8, 2018), citing *Colony Ins. Co. v. NJC Enterprises, LLC*, No. 09-763, 2013 WL 1335737, at *2 (M.D. La. April 1, 2013).

[35] *Firefighters' Retirement System,* 2018 WL 326504, at *4, citing *Naquin v. UNOCAL Corp.*, No. 01-3124, 2002 WL 1837838, at *7 (E.D. La. Aug. 12, 2002). *See also Southern Scrap Metal Co. v. Fleming*, No. 01-2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003) ("The [work product] doctrine protects not only materials prepared by a party, but also materials prepared by a co-party, or representative of a party, including attorneys, consultants, agents, or investigators."); *Colony Ins. Co.*, 2013 WL 1335737 at *2 (same).

[36] *Firefighters' Retirement System,* 2018 WL 326504 at *4, citing *Colony Ins. Co.,* 2013 WL 1335737 at *2. *See also Williams v. United States Environmental Services, LLC*, No. 15-168, 2016 WL 617447, at *4 (M.D. La. Feb. 16, 2016) ("Work product protection extends to documents and tangible things that are prepared in anticipation of litigation by a party or its representative, Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the underlying relevant facts, … or to documents assembled in the ordinary course of business ….") (internal citations omitted).

[37] *See* R. Doc. 75, p. 3, n. 9: "The reserves are set forth in the claim notes and are included on the privilege log as part of the last line item." Despite this statement, the fact that Plaintiff could not even discern which log entries apply to the loss reserve information further supports a finding that the privilege log lacks sufficient details. R. Doc. 78, p. 9.

Homeland's retention of counsel, and the sufficiency of the log.

According to Homeland, the applicable privilege log entry for the loss reserve information asserts the privilege beginning September 14, 2021.[38] This date is a year after the retention of counsel (September 14, 2020), according to Unger and as noted on the first log entry,[39] and almost two-and-a-half years after Plaintiff's first alleged notice of its claim (May 2019).[40] It does not appear from the privilege log that Homeland has withheld any loss reserve information related to Plaintiff's claims in this case before September 14, 2021. If loss reserve information predating September 14, 2021, Homeland shall produce that information to Plaintiff if it has not already been produced.

As to the second issue, the privilege log is insufficient. Pursuant to Local Rule 26(c):

> A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: name of the document, electronically stored information, or tangible things; description of the document, electronically stored information, or tangible thing, which description must include each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege.[41]

"[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim" and "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege."[42] "The standard for testing the adequacy of the privilege log is whether, as to each document, the entry sets forth facts that 'would suffice to establish each element of the privilege or immunity that is claimed.'" "The focus is on the specific descriptive portion of the log, and 'not on conclusory

---

[38] R. Doc. 75-6, p. 5.
[39] R. Doc. 75-10, ¶ 3 and R. Doc. 75-6, p. 1.
[40] R. Doc. 78, p. 9, citing R. Doc. 31, ¶ 23 (First Amended Complaint).
[41] Local Rule 26(c) (emphasis added).
[42] *Firefighters' Retirement System,* 2018 WL 326504 at *4, citing *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.,* 876 F.3d 690, 696 (5th Cir. 2017) (internal citations omitted).

invocations of the privilege or work-product rule, since the burden of the party withholding documents cannot be discharged by mere conclusory' assertions.".[43]

The log's description[44] of the allegedly privileged documents consists solely of the words "Legal advice and strategy," which is clearly insufficient.[45] Unger's Declaration provides additional information that sheds more light on the potential application of the privilege;[46] however, as Plaintiff points out, standing alone, the Declaration provides no foundation for Unger's knowledge of the claims reserves or the documents withheld, or The MedPro Group's involvement in the case.[47] Homeland shall review this Court's opinion in *Firefighters' Retirement System, et al. v. Citgo Group Limited, et al.*,[48] which thoroughly explains the requirements of a privilege log and provide a revised supplemental privilege log that fully complies with Local Civil Rule 26(c) so that Plaintiff can assess the merits of the privilege claimed.[49] If necessary to provide context to the privilege log, Homeland may also supply a revised declaration. This Motion to Compel will be terminated to give Homeland

---

[43] *Firefighters' Retirement System,* 2018 WL 326504 at *4, citing *Chemtech Royalty Associates, L.P. v. U.S.*, Nos. 05-944, 06-258, 07-405, 2009 WL 854358, at *3 (M.D. La. March 30, 2009) (internal citations omitted).

[44] It is noted that, given the more detailed description provided in Unger's Declaration, if Homeland establishes a sufficient basis for Unger's knowledge, work product privilege may exist over the withheld loss reserve information, considering the dates indicated on the log entry and Unger's statements that the reserves were set on the advice of counsel and in anticipation of litigation. *See, e.g., Firefighters' Ret. Sys.,* 2018 WL 326504, at *4 ("Pursuant to Fed. R. Civ. P. 26(b)(3)(A), '[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or *its representative* (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent.)'" (emphasis in original), and noting that certain log entries were sufficiently detailed to establish that the underlying documents were prepared in anticipation of litigation because they reflected that an employee of one of the plaintiffs took handwritten notes regarding the plaintiffs' attorneys' recommendations, communications, and analysis of litigation).

[45] *Chemtech Royalty Assocs., L.P.,* 2009 WL 854358 at *3 ("For example, privilege log entries that state the documents concerned 'legal advice' lack sufficient information for the court or other parties to determine the applicability of the privilege.") and *see Firefighters' Retirement System,* 2018 WL 326504 at *4.

[46] Competent declarations and affidavits can be considered along with privilege logs in the evaluation of the applicability of the privilege. *See Chemtech Royalty Assocs., L.P.,* 2009 WL 854358, at *3 ("Additional detail in the privilege log or supporting affidavits for the allegedly privileged documents may be necessary to provide facts relating to the individuals listed on the privilege log, including their job titles.").

[47] R. Doc. 78, pp. 7-8.

[48] No. 13-373, 2018 WL 326504 (M.D. La. Jan. 8, 2018).

[49] *See Firefighters' Ret. Sys.,* 2018 WL 326504 at *8 ("[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver." (citing *Cashman Equipment Corp. v. Rozel Operating Co.*, Civil Action 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) (collecting cases)) (other citations omitted).

an opportunity to provide a revised log and declaration, if any.  If the parties are unable to amicably resolve RFP No. 20, Plaintiff may request a status conference.[50]

### III.    CONCLUSION

The loss reserve information sought in RFP No. 20 is relevant to Plaintiff's bad faith claim in this case.  While Homeland has asserted that the information is subject to work product privilege, this claim cannot be adequately assessed because Homeland's current privilege log and Unger's Declaration are insufficient. Accordingly,

**IT IS ORDERED** that, by no later than **October 28, 2022**, Defendant Homeland Insurance Company of New York shall provide Plaintiff eQHealth AdviseWell, Inc. with a revised privilege log that complies with Local Civil Rule 26(c) so that Plaintiff can evaluate the applicability of the asserted work product privilege. Homeland may also provide a revised declaration in support of the log, if necessary to provide context to the privilege log.

**IT IS FURTHER ORDERED** that the Motion to Compel Responses to Requests for Production,[51] filed by Plaintiff eQHealth AdviseWell, Inc., is **TERMINATED.**   If the parties are unable to amicably resolve RFP No. 20 after production of the revised log, Plaintiff may request a status conference with the undersigned.

**IT IS FURTHER ORDERED** that Homeland's Motion for Leave to file Sur-Reply is **DENIED.**[52]

Signed in Baton Rouge, Louisiana, on October 18, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[50] While Homeland's opposition memorandum addresses the imposition of costs and fees, they are not addressed in this Ruling and Order because the current Motion does not seek them. R. Doc. 75, pp. 12-13 *but see* R. Docs. 54 and 78.
[51] R. Docs. 54.
[52] R. Doc. 87.