**OneBeacon**
HEALTHCARE GROUP

onebeaconhc.com



EXHIBIT
1

*SURPLUS LINES NOTICE:*

*NOTICE*

*THIS INSURANCE POLICY IS DELIVERED AS A SURPLUS LINE COVERAGE UNDER THE INSURANCE CODE.*

*IN THE EVENT OF INSOLVENCY OF THE COMPANY ISSUING THIS CONTRACT, THE POLICYHOLDER OR CLAIMANT IS NOT COVERED BY THE LOUISIANA INSURANCE GUARANTY ASSOCIATION WHICH GUARANTEES ONLY SPECIFIC TYPES OF POLICIES ISSUED BY AN INSURANCE COMPANIES AUTHORIZED TO DO BUSINESS IN LOUISIANA.*

*THIS SURPLUS LINES POLICY HAS BEEN PROCURED BY THE FOLLOWING LICENSED LOUISIANA SURPLUS LINES BROKER:*

*SIGNATURE OF LICENSED LOUISIANA SURPLUS LINES BROKER OR AUTHORIZED REPRESENTATIVE*

Samuel Kerr Smith

*PRINTED NAME OF LICENSED LOUISIANA SURPLUS LINES BROKER*

| RE: Managed Care E&O - Primary eQHealth Solutions, Inc. | Policy |
|---|---|

| Account No: 9865 | Policy No: MCR-10591-19 | |



EXHIBIT
"A"

199 Scott Swamp Road
Farmington, CT 06032

860.321.2888 t
860.321.2889 f

HOMELAND_000009



199 Scott Swamp Road
Farmington, CT 06032
onebeaconhc.com

A Member of OneBeacon Insurance Group

**Welcome to OneBeacon Healthcare Group™.**

Thank you for choosing a member company[1] of OneBeacon Insurance Group, Ltd. as your liability insurance carrier.

At OneBeacon Healthcare Group, we take a unique approach in helping policyholders mitigate risk and stay up to date with changes in the managed care industry.

## Risk Management Information and Support at Your Fingertips

As an added value to a professional liability policy, we are pleased to offer the following resources, many of which are already included in your policy's cost!

## Resources Include:
- **Exclusive website:** a policyholders-only risk management portal page with dozens of resources for all healthcare settings.
- **AboutRisk® Learning Webinar Series:** interactive webinars presented monthly, most with continuing education credits available.
- **AboutRisk Learning Library:** an extensive selection of pre-recorded educational sessions available on demand for risk manager, staff or leadership continuing education.
- **AboutRisk Learning Course:** a unique, web-based fundamentals in healthcare risk management training course, with dedicated faculty support.
- **Consultative Services:** are available to policyholders.
- **Enewsletters and Publications:** news and headline alerts on the latest case law, legislation, cases to watch and hot industry topics
- **"Tips & Tools"** to consider while drafting managed care contracts, interacting with providers and documenting your files

**As a policyholder, you can register to start accessing this material now.**

---

[1] Coverages may be underwritten by one of the following insurance companies: Atlantic Specialty Insurance Company, Homeland Insurance Company of New York, Homeland Insurance Company of Delaware, OBI America Insurance Company and OBI National Insurance Company.

HOMELAND_000010



199 Scott Swamp Road
Farmington, CT 06032
onebeaconhc.com

A Member of OneBeacon Insurance Group

- To register, go to https://obpi.therozovskygroup.com. If you have previously registered please take an opportunity to update your information by re-registering so that we can send you our webinar invitations and enewsletter updates. Please know we value your privacy and will never sell or otherwise distribute your personal information to any third party.
- If you have difficulty registering, please contact Joshua Rozovsky at 860.242.1302 or josh@therozovskygroup.com.

## Liability Policy Coverage Questions

If you have any questions regarding your policy or coverage afforded under your OneBeacon Healthcare liability policy(s), please contact your liability insurance broker, retailer or producer. OneBeacon Healthcare Group Underwriting and Risk Management cannot provide direct communication with policyholders regarding specific policy language and/or coverage.

## Claims Management Support

We realize that - despite best efforts - claims sometimes do occur. At OneBeacon Healthcare Group, an experienced Claims Examiner is assigned for each reported claim, and will serve as a dedicated resource and point of contact.

- If you have any questions about the process for reporting a claim, please contact the Claims Department at (877) 701-0171.

- Claims can be submitted in one of three ways:

  **1. Secure E-mail\*:** obiclaims@onebeacon.com . (You will receive an immediate email acknowledgment).
  \*Please DO NOT send new claims reports directly to a member of the Claims department, use unsecured email to report or discuss claims or include any protected health information (PHI) or personally identifiable information (PII). Do not "cc" anyone on a claims report email.

  **2. Fax:** 877.256.5067

HOMELAND_000011



199 Scott Swamp Road
Farmington, CT 06032
onebeaconhc.com

A Member of OneBeacon Insurance Group

3. **U.S. Mail:**

Claims
OneBeacon Insurance
199 Scott Swamp Road
Farmington, CT 06032

Thank you again for selecting OneBeacon Healthcare Group™ as your specialists for providing professional liability solutions. We look forward to working with you.

Patricia Hughes, MSN, CPHRM, FASHRM
Senior Vice President, Healthcare Risk
Management
860.321.2601
phughes@onebeacon.com

Virginia Troy, Esq., RN, MPH
Vice President, Managed Care
Claims
860.321.2901
Vtroy@onebeacon.com

HOMELAND_000012

IL P 001 01 04

# U.S. TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC") ADVISORY NOTICE TO POLICYHOLDERS

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Notice carefully.**

The Office of Foreign Assets Control (OFAC) administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons". This list can be located on the United States Treasury's web site – http://www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, no payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

 © ISO Properties, Inc., 2004

HOMELAND_000013

**Homeland Insurance Company of New York**
605 Highway 169 North
Suite 800
Plymouth, MN 55441
*(hereinafter referred to as the "Underwriter")*



**Policy Number: MCR-10591-19**

## DECLARATIONS

### MANAGED CARE ERRORS AND OMISSIONS LIABILITY POLICY

**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST YOU DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIM EXPENSES, AND CLAIM EXPENSES WILL BE APPLIED AGAINST THE RETENTION. WE WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR CLAIM EXPENSES ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

| ITEM 1. **NAMED INSURED:**<br>Name and Principal Address:<br>eQHealth Solutions, Inc.<br>8440 Jefferson Hwy Suite 101<br>Baton Rouge, LA 70809 | ITEM 2. **POLICY PERIOD:**<br><br>(a) Inception Date: January 16, 2019<br>(b) Expiration Date: January 16, 2020<br>Both dates at 12:01 a.m. at the<br>Principal Address of the first **Named Insured** in ITEM 1. |
|---|---|

| ITEM 3. **LIMITS OF LIABILITY** | |
|---|---|
| (A) Each **Claim** Limit of Liability | $5,000,000 |
| (B) Policy Aggregate Limit of Liability | $5,000,000 |

| ITEM 4. **RETENTION** | |
|---|---|
| (A) Each **Claim** | $50,000 |

ITEM 5. **RETROACTIVE DATE**: September 19, 1986

ITEM 6. **PREMIUM:** $56,000

| | |
|---|---|
| X | ***Gross Premium:*** **We will pay a percentage of the Premium shown above as brokerage commission. We do not pay contingent or deferred commissions. Consult your broker for information concerning commission.** |
| _ | ***Net Premium:*** **The Premium shown above is net, and we will pay no brokerage commission of any kind thereon.** |

Page 1 of 2

HOMELAND_000014

| ITEM 7. **EXTENDED REPORTING PERIOD:** |
|---|

12 months at 100% of Full Annual Premium

**"Full Annual Premium" means the amount set forth in ITEM 6 PREMIUM above, including any premium adjustments made during the Policy Period.**

| ITEM 8. **ALL NOTICES REQUIRED TO BE GIVEN TO US UNDER THE YOUR REPORTING OBLIGATIONS SECTION OF THIS POLICY MUST BE ADDRESSED TO:** |
|---|

Claims
OneBeacon Insurance Group
199 Scott Swamp Road
Farmington, CT 06032
- or-
OBIClaims@onebeacon.com

**ALL OTHER NOTICES REQUIRED TO BE GIVEN TO US UNDER THIS POLICY MUST BE ADDRESSED TO:**

OneBeacon Healthcare Group
199 Scott Swamp Road
Farmington, CT 06032

| ITEM 9. **POLICY FORM AND ENDORSEMENTS ATTACHED AT ISSUANCE:** |
|---|

| | |
|---|---|
| HPF 41001 04 11 | |
| HPE-40013-01-12 | Service of Suit |
| HPE-41004-04-11 | Amend Definition of Managed Care Activity to Add Specific Activity |
| HPE-41006A-06-14 | Additional Insured with Exclusion (C) Carveback for Customer Claim |
| HPE-41008-05-15 | Amend Other Insurance |
| HPE-41012-04-11 | Amend Section IV(B)For Settlement Percentage |
| HPE-41015-12-11 | Amend Section VII Your Reporting Obligations (A) for Designated Titles |
| HPE-41036-02-12 | Amend Section II Government Regulatory Exclusion (J) With Sublimits |
| HPE-41038-12-11 | Amend Insured Person to Include Duly Authorized to Perform Managed Care Services |
| HPE-41044-09-14 | Additional Insured |
| HPE-41044A-09-14 | Additional Insured with Exclusion (C) Carveback for Customer Claim |
| HPE-41045-01-12 | Amend Condition (E)(2) Cancellation by Named Insured for Pro Rata |

These Declarations, the completed signed **Application**, and the Policy (including all endorsements thereto) shall constitute the entire agreement between **you** and **us**.

**Homeland Insurance Company of New York**
By:

_T. M. Smith_

_____          April 1, 2019
Its Authorized Representative                              Date

**Managed Care Errors and Omissions Liability Policy**



**THIS POLICY APPLIES ONLY TO CLAIMS FIRST MADE AGAINST YOU DURING THE POLICY PERIOD OR ANY APPLICABLE EXTENDED REPORTING PERIOD. CLAIM EXPENSES ARE PART OF AND NOT IN ADDITION TO THE LIMIT OF LIABILITY. THE LIMIT OF LIABILITY AVAILABLE TO PAY DAMAGES WILL BE REDUCED AND MAY BE EXHAUSTED BY CLAIM EXPENSES, AND CLAIM EXPENSES WILL BE APPLIED AGAINST THE RETENTION. WE WILL HAVE NO OBLIGATION TO PAY JUDGMENTS, SETTLEMENTS OR CLAIM EXPENSES ONCE THE APPLICABLE LIMIT OF LIABILITY IS EXHAUSTED. PLEASE READ THE ENTIRE POLICY CAREFULLY.**

In consideration of the payment of the premium, and in reliance on all statements made and information furnished to **us**, and subject to all of the terms and conditions of this Policy (including all endorsements hereto), **you** and **we** agree as follows:

**I.     WHAT THIS POLICY COVERS**

**We** will pay on **your** behalf **Damages** and **Claim Expenses** in excess of the Retention that **you** are legally obligated to pay as a result of a **Claim** for:

**(A)**     an act, error, or omission, or series of acts, errors, or omissions, committed or allegedly committed by **you** or on **your** behalf in the performance of a **Managed Care Activity;**

**(B)**     **Antitrust Activity** by **you** or on **your** behalf in the performance of a **Managed Care Activity;**

**(C)**     **Vicarious Liability** for an act, error, or omission, or series of acts, errors, or omissions, by a person or entity other than **you** in the performance of a **Managed Care Activity**;

**(D)**     **Vicarious Liability** for an act, error, or omission, or series of acts, errors, or omissions, by a person or entity other than **you** in rendering, or failing to render, **Medical Services**; and

**(E)**     **Privacy Liability;**

provided that such **Claim** is first made against **you** during the **Policy Period** or applicable Extended Reporting Period and reported to **us** in accordance with Section VII Your Reporting Obligations of this Policy.

**II.     WHAT THIS POLICY EXCLUDES**

No coverage will be available under this Policy for any **Claim**, **Damages**, or **Claim Expenses**:

**(A)**     based upon or arising out of any:

HPF-41001-04-11

Page 1 of 15

HOMELAND_000016

(1)     dishonest, fraudulent, criminal, or malicious act, error, or omission committed or allegedly committed by, or on behalf of, or in the name or right of, or for the benefit of any of **you**;

(2)     willful violation of any local, state, federal, or foreign act, statute, rule, regulation, requirement, ordinance, common law, or other law by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

(3)     gaining of any profit, remuneration, or advantage to which any of **you** is not legally entitled;

provided that: (a) for the purpose of determining the applicability of this Exclusion, no act, error, or omission committed or allegedly committed by any of **you** will be imputed to any other of **you** who was not aware of and did not participate in the act, error, or omission; and (b) this Exclusion shall not apply to **Claim Expenses** unless the act, error, or omission has been established by a final adjudication of the **Claim**, a final adjudication in any judicial or other proceeding, or an admission by any employee, director, officer, or other representative of any **Named Insured** appointed, authorized, or otherwise empowered to bind **you**;

**(B)**     for any actual or alleged act, error, or omission in rendering, or failing to render, any **Medical Services**; provided that this Exclusion shall not apply to: (a) any **Claim** alleging, under statute, rule, regulation or common law, that the performance of any **Managed Care Activity** by **you** constitutes the rendering of **Medical Services**; or (b) **Vicarious Liability** for an act, error, or omission by a person or entity other than **you** in rendering, or failing to render, **Medical Services**;

**(C)**     based upon or arising out of any allegation or demand made:

(1)     by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

(2)     by, or on behalf of, or in the name or right of, or for the benefit of any prospective, current, or former owner of any legal, security, equity, or other interest in any **Named Insured**, in connection with such owner's interest in the **Named Insured**;

provided that this Exclusion will not apply to: (a) any **Claim** brought by an **Insured Person** in his or her capacity as a participant in a health care, consumer directed health care, behavioral health, prescription drug, dental or vision plan administered by the **Named Insured**; or (b) **Claim Expenses** as a result of any **Claim** brought by an **Insured Person** on behalf of the federal government as a *qui tam* action alleging violations of the False Claims Act of 1863;

**(D)**     based upon or arising out of any:

(1)     actual or alleged act, error, or omission if, before the Inception Date of this Policy stated in the Declarations, **you** knew or should reasonably have known that the act, error, or omission would give rise to a **Claim**;

(2)     actual or alleged act, error, or omission that, before the Inception Date of this Policy stated in the Declarations, was the subject of any notice under any prior or

concurrent policy; or

    (3)    prior or pending litigation or administrative, regulatory or other proceeding against any of **you** as of the Inception Date of this Policy, or the same or substantially the same act, error, or omission underlying or alleged therein;

provided that if this Policy is a renewal of one or more policies previously issued by **us** to the **Named Insured**, and the coverage provided by **us** to the **Named Insured** was in effect, without interruption, for the entire time between the inception date of the first such other policy and the Inception Date of this Policy, the reference in this Exclusion to the Inception Date will be deemed to refer instead to the inception date of the first policy under which **we** began to provide the **Named Insured** with the continuous and uninterrupted coverage of which this Policy is a renewal;

**(E)**    based upon or arising out of any **Claim** made against any of **you** for any act, error, or omission committed or allegedly committed during any time when **you** were not an **Insured Person** or a **Named Insured**;

**(F)**    based upon or arising out of any actual or alleged:

    (1)    creation, development, design, manufacture, programming, leasing, licensing, distribution, assembly, installation, alteration, modification, or sale of any computer, computer component (including but not limited to any hardware, network, terminal device, data storage device, input and output device, or back up facility), application, program, software, code, script, or data of any type, nature, or kind;

    (2)    unauthorized, unlawful, or unintentional taking, obtaining, accessing, using, disclosing, distributing, disseminating, transmitting, gathering, collecting, acquiring, corrupting, damaging, destroying, deleting, or impairing of any information or data of any type, nature, or kind, including but not limited to any **Personally Identifiable Information**; provided that this Exclusion (F)(2) shall not apply to any **Claim** for **Privacy Liability;** or

    (3)    failure or inability of any computer, computer component (including but not limited to any hardware, network, terminal device, data storage device, input and output device, or back up facility), application, program, software, code, or script of any type, nature, or kind (a "System") to perform or function as planned or intended, including but not limited to any failure or inability of any System to prevent any hack, virus, contaminant, worm, trojan horse, logic bomb, or unauthorized or unintended accessing or use involving any System;

**(G)**    based upon or arising out of any actual or alleged infringement, misappropriation, misuse, gaining, or taking of, or any inducement to infringe, misappropriate, misuse, gain, or take, any patent, process, idea, style of doing business, trade secret, confidential or proprietary information, intellectual property, or other similar information or property of any type, nature, or kind, other than infringement of a copyright, title, slogan, trademark, trade name, trade dress, service mark, or service name in the **Named Insured's** performance of a **Managed Care Activity**;

**(H)**    based upon or arising out of any actual or alleged violation of any responsibility, duty, or obligation imposed under the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, the Investment Advisors Act of 1940, any Blue Sky or other securities law, or any similar local, state, federal or foreign act, statute, rule,

HOMELAND_000018

regulation, requirement, ordinance, common law, or other law, including but not limited to any amendment thereto or any regulation promulgated thereunder;

**(I)**     based upon or arising out of any act, error, or omission or series of acts, errors, or omissions committed or allegedly committed before the Retroactive Date of this Policy stated in the Declarations;

**(J)**     based upon or arising out of any **Claim** brought or maintained by, or on behalf of, or in the name or right of, or for the benefit of any local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal, including but not limited to any type of legal or equitable action or proceeding such agency, body, entity, or tribunal is entitled to bring as a regulator, receiver, trustee, liquidator, rehabilitator, or administrator; provided that this Exclusion will not apply to any **Claim** brought by a local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal:

    (1)     for **Antitrust Activity** by **you** or on **your** behalf in the performance of the **Managed Care Activity** provided by **you** or on **your** behalf;

    (2)     for disciplinary proceedings initiated by a local or state administrative, governmental, or regulatory agency, body, entity, or tribunal against **you** as medical director of the **Named Insured** in connection with **Utilization Review**;

    (3)     for an individual enrollee benefit dispute under a Medicare, Medicaid, or other health plan sponsored by the federal or state (including the District of Columbia) government; or

    (4)     where the administrative, governmental, or regulatory agency, body, entity, or tribunal is the payor for the **Managed Care Activity** provided by **you** or on **your** behalf;

**(K)**     for any actual or alleged express or assumed liability of any of **you** under any indemnification agreement; provided that this Exclusion will not apply to liability that would have attached to **you** in the absence of such agreement and is otherwise covered under this Policy.

## III.     DEFINITIONS

**(A)**     **Antitrust Activity** means any actual or alleged: price fixing; restraint of trade; price discrimination; predatory pricing; monopolization; unfair business practices; or violation of the Federal Trade Commission Act of 1914, the Sherman Antitrust Act of 1890, the Clayton Act of 1914, any similar state, federal, or local antitrust statute or law, or any rule or regulation promulgated under the Act, statute, or law.

**(B)**     **Application** means any information and statements submitted to **us** in applying for the insurance under this Policy.  This information and statements are incorporated in and form a part of this Policy as if physically attached.

**(C)**     **Claim** means any written demand (including a written demand in electronic form) from any person or entity seeking money or services or civil, injunctive, or administrative relief from **you**.  **Claim** does not include:

    (1)     any demand or other notice for an internal review or appeal of or under any of

HOMELAND_000019

**your** policies, practices, procedures, systems, or rules; or

(2) any audit, investigation, or subpoena, including but not limited to any audit, investigation, or subpoena by, or on behalf of, or in the name or right, or for the benefit of any local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal.

A **Claim** will be deemed to have been first made against **you** when it is first received by **you**.

**(D)** **Claim Expenses** means the reasonable and necessary legal and expert fees and expenses incurred in the investigation, adjustment, defense or appeal of any **Claim**, including the costs of electronic discovery and, with **our** prior written consent, public relations consultant expenses. **Claim Expenses** does not include:

(1) any remuneration, salary, wage, fee, expense, overhead, or benefit expense of any of **you**;

(2) any fee, cost, or expense incurred prior to the time that a **Claim** is first made against any of **you** or incurred in pursuing any claim, counterclaim, cross-claim, or other relief brought or maintained by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

(3) any fine, penalty, forfeiture, sanction, tax, or fee.

**(E)** **Claim Services** means the following services, but only if performed by **you** or on **your** behalf: the submission, handling, investigation, adjudication, denial, payment, or adjustment of claims for benefits or coverages under health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans.

**(F)** **Damages** means any settlements, judgments, pre-judgment interest, post-judgment interest, claimant's attorney's fees in an amount equal to the percentage that any **Damages** covered under this Policy for any settlement or judgment bear to the total amount of such judgment or settlement, or other amounts (including punitive, multiple, or exemplary damages if insurable under the **Law Most Favorable to Insurability**) which **you** are legally obligated to pay as a result of a **Claim**. **Damages** does not include:

(1) any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law; provided that **Damages** will include fines or penalties which **you** are legally obligated to pay as a result of a **Claim** for **Antitrust Activity** if such fine or penalty is insurable under the **Law Most Favorable to Insurability**;

(2) any non-monetary or equitable relief or redress, including but not limited to any cost or expense of complying with any injunctive, declaratory, or administrative relief or specific performance award;

(3) any payment, restitution, return, or disgorgement of any fee, profit, royalty, premium, commission, or charge, or any fund allegedly wrongfully or unjustly held or obtained, including but not limited to any profit, remuneration or advantage to which **you** were not legally entitled;

HOMELAND_000020

(4)    any amount any of **you** pay or may be obligated to pay under any contract or agreement, including but not limited to any policy, bond, benefit plan, or provider agreement;

(5)    any loss, cost, or expense of correcting, changing, modifying, or eliminating any policy, practice, procedure, system, or rule; or

(6)    any matter that is uninsurable under applicable law.

**(G)    Insured Person** means:

(1)    any past, present, or future employee, director, officer, trustee, member of the board of managers, governor or medical director of, or volunteer for, the **Named Insured;** and

(2)    any natural person duly authorized by the **Named Insured** to participate on any review board or committee of the **Named Insured** or to conduct credentialing, peer review, or **Utilization Review** on behalf of the **Named Insured**,

but only while any such person is acting within the scope and capacity of his or her duties for the **Named Insured**.

In the event of the death, incapacity, or bankruptcy of an **Insured Person**, any **Claim** made against the heir, legal representative, assign or domestic partner of such **Insured Person** in his or her capacity as such will be deemed to be a **Claim** made against such **Insured Person**.

**(H)    Law Most Favorable to Insurability** means the applicable law most favorable to the insurability of the applicable **Damages**, which shall be the law of the jurisdiction where the actual or alleged act, error, or omission giving rise to liability took place, the applicable **Damages** were awarded, the **Named Insured** is incorporated or has its principal place of business, or **we** are incorporated or have **our** principal place of business.

**(I)    Managed Care Activity** means any of the following services or activities, whether provided on paper, in person, electronically, or in any other form and whether performed by **you** or on **your** behalf: **Provider Selection**; **Utilization Review**; **Quality Improvement Organization Programs**; advertising, marketing, selling, or enrollment for health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans; **Claim Services**; establishing health care provider networks including tiered networks; provision of information with respect to tiered networks, including cost and quality information regarding specific providers, services, or charges; reviewing the quality of **Medical Services** or providing quality assurance; design or implementation of financial incentive plans; design or implementation of **Pay for Performance Programs**; wellness or health promotion education; development or implementation of clinical guidelines, practice parameters or protocols; triage for payment of **Medical Services**; calculation of medical loss ratio and related distribution; and services or activities performed in the administration or management of health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans.

**(J)    Medical Services** means health or medical care or treatment provided or prescribed to any person, including but not limited to any of the following: medical, surgical, dental,

HOMELAND_000021

psychiatric, mental health, chiropractic, osteopathic, nursing, or other professional health or medical care; the use, prescription, furnishing, or dispensing of medications, drugs, blood, blood products, or medical, surgical, dental, or psychiatric supplies, equipment, or appliances in connection with such care; the furnishing of food or beverages in connection with such care; the providing of counseling or other social services in connection with such care; or the handling of, or the performance of post-mortem examinations on, human bodies. **Medical Services** does not include:

    (1)    **your** participation in health fairs;

    (2)    **your** administration of flu shots, wellness programs or screenings, nurse call lines or employee assistance programs;

    (3)    **your** voluntary performance of emergency **Medical Services** without expectation or receipt of remuneration;

    (4)    **your** coordination of care activities; provided that such activities are a fundamental component of the **Named Insured's Managed Care Activity.**

**(K)**    **Named Insured** means the entity designated in the Declarations (the "first **Named Insured**") and each other entity listed as a **Named Insured** by endorsement to this Policy.

**(L)**    **Pay for Performance Programs** means programs which compensate health care providers based on process measures, achievement of documented quality of care metrics, cost efficiencies or patient outcomes.

**(M)**    **Personally Identifiable Information** means a natural person's name used in combination with one or more of the following:

    (1)    health care or other medical information, including "protected health information" as defined in the Health Insurance Portability and Accountability Act of 1996, as amended, and any regulation issued pursuant to the Act;

    (2)    "non-public personal information" as defined in the Gramm-Leach Bliley Act of 1999, as amended, and any regulation issued pursuant to the Act;

    (3)    social security, driver's license, or other state identification numbers or credit, debit, or other financial account numbers with their related security and access codes, passwords or pin numbers that provide access to the natural person's financial account information; or

    (4)    any other non-public personally identifiable information protected under any local, state, federal or foreign act, statute, rule, regulation, requirement, or other law.

**Personally Identifiable Information** does not include information that is lawfully available to the general public, including but not limited to information from any local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal.

**(N)**    **Policy Period** means the period from the Inception Date of this Policy stated in the Declarations to the Expiration Date of this Policy stated in the Declarations or to any earlier cancellation or termination of this Policy.

HOMELAND_000022

**(O)** **Privacy Liability** means any actual or alleged act, error, or omission, or series of acts, errors, or omissions, by or on behalf of the **Named Insured** in the performance of a **Managed Care Activity** that results in the unintentional disclosure of **Personally Identifiable Information** of a third party that is in the care, custody, and control of the **Named Insured**.

**(P)** **Provider Selection** means any of the following, but only if performed by **you** or on **your** behalf:  evaluating, selecting, credentialing, contracting with or performing peer review of any provider of **Medical Services**.

**(Q)** **Quality Improvement Organization Programs** means services and activities performed by **you** or on **your** behalf to improve the effectiveness, efficiency, economy, and quality of care for beneficiaries under any government sponsored health care plan.

**(R)** **Related Claims** means all **Claims** based upon or arising out of the same or related acts, errors, omissions, or course of conduct or the same or related series of acts, errors, omissions, or course of conduct.

**(S)** **Utilization Review** means the process of evaluating the appropriateness, necessity or cost of **Medical Services** for purposes of determining whether payment or coverage for such **Medical Services** will be authorized or paid for under any health care, consumer directed health care, behavioral health, prescription drug, dental, vision, long or short term disability, automobile medical payment, or workers' compensation plans, but only if performed by **you** or on **your** behalf.  In clarification and not in limitation of the foregoing, **Utilization Review** will include prospective review of proposed payment or coverage for **Medical Services;** concurrent review of ongoing **Medical Services;** retrospective review of already rendered **Medical Services** or already incurred costs; disease management; case management; and the use of predictive modeling to identify individuals or populations for disease management or case management programs.

**(T)** **Vicarious Liability** means liability imposed on **you** for the acts, or series of acts, of a person or entity other than any of **you** under a theory of ostensible agency, apparent agency, or *respondeat superior*.

**(U)** **We**, **us**, and **our** means the Underwriting Company as set forth in the Declarations of this Policy.

**(V)** **You** and **your** means:

    (1)    any **Named Insured**; and

    (2)    any **Insured Person**.

## IV. HOW CLAIMS WILL BE HANDLED

**(A)** **We** have the right and duty to defend any covered **Claim**, even if the allegations of such **Claim** are groundless, false or fraudulent.  **You** may propose to **us** counsel to represent **you** in  connection with a covered **Claim**; provided that **we** have the right to select counsel to represent **you** in connection with any such **Claim.**

**(B)** **We** have the right to investigate, direct the defense, and conduct negotiations and, with **your** consent which will not be unreasonably withheld, enter into a settlement of any **Claim**.  If **you** refuse to consent to a settlement acceptable to the claimant in

HOMELAND_000023

accordance with **our** recommendation, then, subject to **our** applicable Limits of Liability stated in the Declarations, **our** liability for such **Claim** will not exceed:

    (1)    the amount for which the **Claim** could have been settled plus **Claim Expenses** up to the date **you** refused to settle such **Claim** (the "Settlement Amount"); plus

    (2)    seventy percent (70%) of any **Damages** or **Claim Expenses** in excess of the Settlement Amount incurred in connection with the **Claim**. The remaining thirty percent (30%) of **Damages** and **Claim Expenses** in excess of the Settlement Amount will be carried by **you** at **your** own risk and will be uninsured.

  **(C)**    **You** will not, except at **your** own cost, incur any expense, make any payment, admit any liability, assume any obligation, or settle any **Claim** without **our** prior written consent, and no coverage will be available under this Policy for any such settlement, expense, payment, liability, or obligation.

## V.    LIMITS OF LIABILITY AND RETENTION

  **(A)**    **Each Claim Limit of Liability.** The amount stated as the Each Claim Limit of Liability in the Declarations will be **our** maximum Limit of Liability for all **Damages** and all **Claim Expenses** from each **Claim** or **Related Claims** for which this Policy provides coverage. This Limit of Liability will be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in the Declarations.

  **(B)**    **Policy Aggregate Limit of Liability.** The amount stated as the Policy Aggregate Limit of Liability in the Declarations will be **our** maximum aggregate Limit of Liability for all **Damages** and all **Claim Expenses** from all **Claims** and all **Related Claims** for which this Policy provides coverage.

  **(C)**    The applicable Limits of Liability described in this Policy will apply regardless of the time of the payment under this Policy, the number of persons or entities included within the definition of **you**, or the number of **Claims** or acts, errors, or omissions under this Policy.

  **(D)**    **Claim Expenses** are part of, and not in addition to, the applicable Limits of Liability, and payment of **Claim Expenses** by **us** will reduce, and may exhaust, the applicable Limits of Liability.

  **(E)**    **We** will have no obligation to pay **Damages** or **Claim Expenses** after the applicable Limit of Liability has been exhausted by payments by **us**. If the Policy Aggregate Limit of Liability stated in the Declarations is exhausted by payments by **us**, the premium for this Policy will be fully earned, all of **our** obligations under this Policy will be completely fulfilled and exhausted, and **we** will have no further obligations of any type, nature, or kind under this Policy.

  **(F)**    **Retention.** **You** will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to **Damages** and **Claim Expenses** from each **Claim** for which this Policy provides coverage. **Our** obligation to make any payment under this Policy for any **Claim** will be excess of the Retention. If **you** are unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on **your** behalf. **We** have no obligation whatsoever to pay any portion of the Retention; however, **we** may choose to pay a portion of the Retention, in which case **you** will repay **us** any amounts paid by **us**, and the amounts paid will be credited against and will reduce the applicable Limits of Liability

HOMELAND_000024

unless and until they are repaid in full by **you**. **Your** inability to pay, failure to pay, or refusal to pay any portion of the Retention will not alter or increase **our** obligations under the Policy.

## VI.  HOW WE WILL TREAT RELATED CLAIMS

All **Related Claims** will constitute a single **Claim** regardless of: (A) the number, identity, or addition of parties, theories of liability, or requests for relief; (B) the number or timing of the **Related Claims**, even if the **Related Claims** were made in more than one policy period; or (C) whether the **Related Claims** are asserted in a class action or otherwise. All **Related Claims** will be treated as a single **Claim** made when the earliest of the **Related Claims** was first made against **you** or is treated as having been first made in accordance with Section VII Your Reporting Obligations of this Policy, whichever is earlier.

## VII.  YOUR REPORTING OBLIGATIONS

**(A)**    If, during the **Policy Period** or any applicable Extended Reporting Period, any **Claim** is first made against **you**, as a condition precedent to any right to coverage under this Policy, **you** must give **us** written notice of the **Claim** as soon as practicable thereafter and in no event later than:

(1)    with respect to any **Claim** first made during the **Policy Period**, ninety (90) days after the Expiration Date of this Policy stated in the Declarations or any earlier cancellation or termination of this Policy; or

(2)    with respect to any **Claim** first made during any applicable Extended Reporting Period, the expiration of such applicable Extended Reporting Period.

**Your** timely and sufficient notice of a **Claim** will be deemed timely and sufficient notice for all of **you** involved in the **Claim**. The notice must give full particulars of the **Claim**, including but not limited to: information about the act, error, or omission; the identity of all potential claimants and any of **you** involved; a description of the damages that resulted from the act, error, or omission; and the manner in which **you** first became aware of the act, error, or omission.

**(B)**    If, during the **Policy Period**, **you** first become aware of an act, error, or omission that is reasonably likely to give rise to a **Claim** and give **us** written notice thereof as soon as practicable thereafter but in any event during the **Policy Period**, then any covered **Claim** subsequently made against **you** arising out of the act, error, or omission will be treated as if it had been first made during the **Policy Period**, provided that **you** give **us** written notice of the covered **Claim** as soon as practicable thereafter. The notice must give full particulars of the act, error, or omission, including but not limited to: information about the act, error, or omission; the identity of all potential claimants and any of **you** involved; the manner in which **you** first became aware of the act, error, or omission; and the reasons **you** believe it likely to give rise to a **Claim**.

## VIII.  GENERAL CONDITIONS

### (A)    Assistance and Cooperation

**You** are obligated to provide **us** with all information, assistance, and cooperation that **we** reasonably request, including but not limited to information, assistance, and

HOMELAND_000025

cooperation in the investigation, association, defense, settlement, or other resolution of a **Claim**; the pursuit or enforcement of any right of subrogation, contribution, indemnity, or other obligation from another; or conduct with respect to any action, suit, appeal, or other proceeding.

**(B)**   **Subrogation**

In the event of any payment under this Policy, **we** will be subrogated to the extent of the payment to all of **your** rights of recovery from any person or entity other than one of **you**. **You** must do everything necessary to secure these rights, including but not limited to executing any documents necessary to allow **us** to effectively bring suit in **your** name. **You** also must do nothing that may prejudice **our** position or **our** potential or actual rights of recovery.

**(C)**   **Other Insurance**

The coverage provided under this Policy shall be specifically excess of, and will not contribute with: (1) any other insurance or self-insurance, regardless of whether the other insurance or self-insurance is collectible or is stated as primary, *pro rata*, contributory, excess, contingent, or otherwise, unless the other insurance or self-insurance is specifically written as excess of this Policy; or (2) any defense, hold harmless, or indemnification that **you** are entitled to from any person or entity other than one of **you**.

**(D)**   **Change In Risk**

   (1)   If, during the **Policy Period**, a **Named Insured** acquires or creates another entity where the total annual revenues of such entity are less than ten percent (10%) of the **Named Insured's** total annual revenues as set forth in the **Application**, then such entity shall be included within the definition of **Named Insured**, but only with respect to an act, error, or omission by or on behalf of the **Named Insured** or its **Insured Persons** in the performance of a **Managed Care Activity** first committed or allegedly committed after the effective date of such transaction.

   (2)   If, during the **Policy Period**, a **Named Insured**:

      (a)   acquires or creates another entity where the total annual revenues of such entity are ten percent (10%) or more of the **Named Insured's** total annual revenues as set forth in the **Application**; or

      (b)   merges or consolidates with another entity such that the **Named Insured** is the surviving entity,

   then for a period of ninety (90) days after the effective date of the transaction or until the Expiration Date, or cancellation or termination date of this Policy (whichever is shorter), such entity shall be included within the definition of **Named Insured**, but only with respect to an act, error, or omission by or on behalf of the **Named Insured** or its **Insured Persons** in the performance of a **Managed Care Activity** first committed or allegedly committed after the effective date of such transaction. Thereafter, there will be no coverage under this Policy for any **Claim** based upon, arising out of, or in any way involving such entity unless within such ninety (90) day period **we** have specifically agreed by written endorsement to this Policy to provide coverage for such entity and the

HOMELAND_000026

**Named Insured** has accepted any terms, conditions, exclusions, or limitations, including payment of additional premium, as **we** may impose in connection with such transaction.

(3)    If, during the **Policy Period**, any of the following events occurs:

(a)    the first **Named Insured** ceases to do business, is dissolved, sold, or acquired, or is merged into or consolidated with another entity such that the first **Named Insured** is not the surviving entity;

(b)    any person or entity acquires the right to elect or appoint more than fifty percent (50%) of the first **Named Insured's** directors, trustees, or member managers or obtains more than fifty percent (50%) of the first **Named Insured's** equity or assets; or

(c)    a receiver, liquidator, conservator, trustee, rehabilitator, or similar official is appointed for or with respect to the first **Named Insured**;

then coverage under this Policy shall continue in full force and effect until the Expiration Date or any earlier cancellation or termination of this Policy, but this Policy shall only apply to: an act, error, or omission in the performance of a **Managed Care Activity,** or an act, error, or omission by a person or entity other than **you** in rendering or failing to render **Medical Services,** first committed or allegedly committed before the effective date of such event.  There will be no coverage available under this Policy for any **Claim** based upon or arising out of any act, error, or omission in the performance of a **Managed Care Activity,** or any act, error, or omission by a person or entity other than **you** in rendering or failing to render **Medical Services,** committed or allegedly committed on or after the effective date of such event.

(4)    If, during the **Policy Period**, any of the following events occurs:

(a)    any **Named Insured,** other than the first **Named Insured,** ceases to do business, is dissolved, sold, or acquired, or is merged into or consolidated with another entity such that such **Named Insured** is not the surviving entity;

(b)    any person or entity acquires the right to elect or appoint more than fifty percent (50%) of the directors, trustees, or member managers, or obtains more than fifty percent (50%) of the equity or assets of, any **Named Insured** other than the first **Named Insured**; or

(c)    a receiver, liquidator, conservator, trustee, rehabilitator, or similar official is appointed for or with respect to any **Named Insured** other than the first **Named Insured**;

then coverage under this Policy shall continue in full force and effect with respect to such **Named Insured** and its **Insured Persons** until the Expiration Date or any earlier cancellation or termination of this Policy, but this Policy shall only apply to: an act, error, or omission in the performance of a **Managed Care Activity** by or on behalf of such **Named Insured** or its **Insured Persons,** or an act, error, or omission by a person or entity other than **you** in rendering or failing to render **Medical Services,** first committed or allegedly committed before the effective date of such event.  There will be no coverage available

HOMELAND_000027

under this Policy for any **Claim** based upon or arising out of any act, error, or omission in the performance of a **Managed Care Activity** by or on behalf of such **Named Insured** or its **Insured Persons**, or any act, error, or omission by a person or entity other than **you** in rendering or failing to render **Medical Services**, committed or allegedly committed on or after the effective date of such event.

**(E)    Cancellation and Non-Renewal**

(1)    **We** may cancel this Policy for non-payment of premium by mailing to the first **Named Insured** at least ten (10) days advance written notice.  If **we** cancel this Policy, earned premium will be computed *pro rata*.

(2)    The first **Named Insured** may cancel this Policy by mailing **us** written notice stating when thereafter such cancellation will be effective.  If the first **Named Insured** cancels this Policy, the earned premium will be computed in accordance with the customary short rate table and procedure.  Premium adjustment may be made either at the time cancellation is effective or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

(3)    **We** are not required to renew this Policy upon its expiration.  If **we** elect not to renew this Policy, **we** will mail to the first **Named Insured** at least sixty (60) days advance written notice of nonrenewal.  Any offer of renewal on terms involving a change of retention, premium, limit of liability, or other term or condition will not constitute, nor be construed as, a failure or refusal to renew this Policy.

**(F)    Extended Reporting Period**

If this Policy is canceled for any reason other than fraud, misrepresentation, or non-payment of premium or is not renewed by **us** or the first **Named Insured**, then an additional period of time during which **Claims** may be reported (an "Extended Reporting Period") shall be made available, but any such Extended Reporting Period shall apply only to a **Claim** for an act, error, or omission covered by this Policy that is first committed or allegedly committed before the effective date of such cancellation or non-renewal (the "Termination Date") or the effective date of any event described in the Change in Risk Section of this Policy (as applicable), whichever is earlier.  No Extended Reporting Period shall in any way increase **our** Limits of Liability stated in the Declarations, and **our** Limit of Liability for all such **Claims** made during any Extended Reporting Period shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in the Declarations.  The Extended Reporting Period will apply as follows:

(1)    **Automatic Extended Reporting Period**: An Extended Reporting Period of ninety (90) days, beginning as of the Termination Date, will apply automatically and requires no additional premium (the "Automatic Extended Reporting Period"); provided that such Automatic Extended Reporting Period will remain in effect only as long as no other policy of insurance is in effect that would apply to any **Claim** made during such Automatic Extended Reporting Period.

(2)    **Additional Extended Reporting Period**: The first **Named Insured** may purchase an additional Extended Reporting Period for one of the periods of time stated in the Declarations (the "Additional Extended Reporting Period") by notifying **us** in writing of its intention to do so no later than sixty (60) days after

the Termination Date.  The additional premium for this Additional Extended Reporting Period shall be equal to the applicable amount stated in the Declarations and must be paid no later than sixty (60) days after the Termination Date.  Such additional premium shall be deemed fully earned upon inception of such Additional Extended Reporting Period.

If no election to purchase an Additional Extended Reporting Period is made as described above, or if the additional premium for any such Additional Extended Reporting Period is not paid within sixty (60) days after the Termination Date, there will be no right to purchase an Additional Extended Reporting Period at any later time.

**(G)**   **Representations**

**You** represent that the information and statements in connection with the **Application** are true, accurate, and complete and agree that:

(1)   this Policy is issued and continued in force by **us** in reliance upon the truth of **your** representations;

(2)   the information and statements are the basis of this Policy; and

(3)   the **Application** is incorporated in and forms a part of this Policy.

No knowledge or information possessed by any of **you** shall be imputed to any other of **you**, except for material facts or information known to the person or persons who signed the **Application**.  In the event of any material untruth, misrepresentation, or omission in connection with any of the information or statements in the **Application**, this Policy shall be void with respect to any of **you** who knew of such untruth, misrepresentation, or omission or to whom such knowledge is imputed.

**(H)**   **Action Against Us**

No action shall be brought against **us** unless, as conditions precedent thereto, **you** have fully complied with all of the terms of this Policy and the amount of **your** obligation to pay has been finally determined either by judgment against **you** after adjudicatory proceedings or by written agreement between **you**, the claimant, and **us**.  No person or entity shall have any right under this Policy to join **us** as a party to any **Claim**, nor shall **we** be impleaded by **you** or any legal representative of **you** in any **Claim**.

**(I)**   **Your Insolvency**

**We** will not be relieved of any of **our** obligations under this Policy by **your** bankruptcy or insolvency.

**(J)**   **Authorization and Notices**

The first **Named Insured** will act on behalf of all of **you** with respect to: the giving or receiving of any notice under this Policy; the payment of premiums to, or the receiving of return premiums from, **us**; the receiving and accepting of any endorsements issued to form a part of this Policy; and the exercising, or declining to exercise, any Extended Reporting Period.  Any communication by **us** to the first **Named Insured** shall constitute a communication to all of **you**.

**(K)**   **Notice**

HOMELAND_000029

Notice to **you** shall be sent to the first **Named Insured** at the address designated for the **Named Insured** in the Declarations.

Notice to **us** shall be sent to **us** at the address designated for **us** in the Declarations.

**(L)**    **Changes**

Notice to or knowledge possessed by any agent or other person acting on behalf of **us** shall not effect a change, modification, or waiver of or with respect to this Policy, or any part thereof, or prevent or estop **us** from asserting any right under this Policy.  This Policy, or any part thereof, can only be changed, modified, or waived by written endorsement issued to form a part of this Policy.

**(M)**    **Territory**

This Policy applies to a covered **Claim** for an act, error, or omission taking place anywhere in the world; provided that the **Claim** is made against **you** in the United States of America or its territories or possessions and is subject to and governed by the courts and laws of the United States of America.

**(N)**    **Risk Management**

**We** directly or indirectly make available risk management services in connection with this Policy for the purpose of managing and reducing the risks covered under this Policy. Such risk management services may cease or change in **our** sole discretion at any time.

**(O)**    **Economic and Trade Sanctions or Violations of Law**

Any **Claim** or matter or transaction uninsurable under any act, statute, rule, regulation, requirement, ordinance, common law, or other law of the United States of America concerning trade or economic sanctions or export control laws is not covered under this Policy.

**(P)**    **Assignment**

No assignment of interest under this Policy shall bind **us** without **our** prior written consent issued as a written endorsement to form a part of this Policy.

**(Q)**    **Entire Agreement**

**You** agree that this Policy, including the **Application**, Declarations, and any endorsements, constitutes the entire agreement between **you** and **us**.

**(R)**    **Headings**

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

**In witness whereof, we have caused this Policy to be executed by our authorized representative.**

ENDORSEMENT NO.  1
SERVICE OF SUIT ENDORSEMENT

This Endorsement, effective at 12:01 a.m. on January 16, 2019, forms part of

        Policy No.      MCR-10591-19
        Issued to       eQHealth Solutions, Inc.
        Issued by       Homeland Insurance Company of New York

Pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Underwriter hereby designates the Superintendent, Commissioner or Director of Insurance, or other officer specified for that purpose by statute, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the **Insured**, or any beneficiary hereunder, arising out of this contract of insurance.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000031

ENDORSEMENT NO. 2

AMEND DEFINITION OF MANAGED CARE ACTIVITY TO ADD SPECIFIED ACTIVITY ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, the term "**Managed Care Activity**", as defined in Section III DEFINITIONS (I) of this Policy is amended to add the following:

Your participation in health fairs

Your administration of flu shots, wellness programs or screenings, nurse call lines or employee assistance programs

Your voluntary performance of emergency Medical Services without expectation or receipt of remuneration

Your coordination of care activities; provided that such activities are a fundamental component of the Named Insured's Managed Care Activity

Additional Premium charged for this Endorsement: N/A

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-41004-04-11

Page 1 of 1

HOMELAND_000032

ENDORSEMENT NO. 3

ADDITIONAL INSURED WITH EXCLUSION (C) CARVEBACK FOR CUSTOMER CLAIM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged:

(1)     The term **"You** and **your,"** as defined in Section III DEFINITIONS of this Policy, is amended to include the entity(ies) listed in the schedule below (each an "Additional Insured"), but only with respect to a **Claim** for any act, error, or omission committed or allegedly committed by the **Named Insured** or any **Insured Person** in the performance of a **Managed Care Activity** on or after the Retroactive Date set forth opposite the name of each such Additional Insured. ITEM 5 of the Declarations shall be deemed amended accordingly.

| Additional Insured | Retroactive Date |
|---|---|
| State of Colorado Department of Health Care | 01.16.2018 |

(2)     No coverage will be available under this Policy for **Damages** or **Claim Expenses** for any **Claim** against an Additional Insured for any actual or alleged act, error, or omission by such Additional Insured or by any employee, director, officer, trustee, member of the board of managers, governor, medical director, or volunteer of such Additional Insured or any functional equivalent thereof.

(3)     Section II WHAT THIS POLICY EXCLUDES (C) of this Policy is amended to read in its entirety as follows:

**(C)**     based upon or arising out of any allegation or demand made:

(1)     by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

(2)     by, or on behalf of, or in the name or right of, or for the benefit of any prospective, current, or former owner of any legal, security, equity, or other interest in any **Named Insured**, in connection with such owner's interest in the **Named Insured**;

provided that this Exclusion (C) will not apply to:

(a)     any **Claim** brought by an **Insured Person** in his or her capacity as a participant in a health care, consumer directed health care, behavioral health, prescription drug, dental or vision plan administered by the **Named Insured**;

(b)     **Claim Expenses** as a result of any **Claim** brought by an **Insured Person** on behalf of the federal government as a *qui tam* action alleging violations of the False Claims Act of 1863; or

(c)     any **Claim** brought by an Additional Insured, if such Additional Insured:

(i)     is a customer of the **Named Insured** and brings such **Claim** in its

HPE-41006A-06-14

Page 1 of 2

capacity as a customer of the **Named Insured** without the solicitation, assistance, participation, or intervention of the **Named Insured** or any **Insured Person**; and

(iii)    is not a defendant or party against whom relief or recovery is sought in any **Claim** brought by a third party arising out of the same acts, errors or omissions giving rise to the Additional Insured's **Claim** as a customer of the **Named Insured**;

(4)    In accordance with Section V LIMITS OF LIABILITY AND RETENTION (F) of this Policy, the Additional Insured will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to each **Claim** for which this endorsement provides coverage. **Our** obligation to make any payment under this endorsement for any **Claim** will be excess of the Retention.  If the Additional Insured is unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on the Additional Insured's behalf.

(5)    **Our** maximum Limit of Liability for all **Damages** and all **Claim Expenses** resulting from each **Claim** or **Related Claims** made against any Additional Insured(s) shall be $1,000,000, and **our** maximum aggregate Limit of Liability for all **Damages** and all **Claim Expenses** resulting from all **Claims** and **Related Claims** made against any Additional Insured(s) shall be $1,000,000, which amounts shall be part of, and not in addition to, the Limits of Liability set forth in ITEM 3 of the Declarations.

Additional Premium charged for this Endorsement: N/A.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 4
AMEND OTHER INSURANCE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

      Policy Number:    MCR-10591-19

      Issued To:       eQHealth Solutions, Inc.

      Issued By:       Homeland Insurance Company of New York

In consideration of the premium charged, Section VIII GENERAL CONDITIONS (C) of this Policy is amended to read in its entirety as follows:

The coverage provided under this Policy shall be specifically excess of, and will not contribute with:

(1)    Primary Technology Security & Privacy Liability - Specialty Risk Protector  Policy No. 06-8320-61-00 issued by AIG Specialty Insurance Company, or any renewal or replacement thereof, including any and all insurance or self-insurance written as excess over such policy(ies), renewal(s) or replacement(s);

(2)    any other insurance or self-insurance, regardless of whether the other insurance or self-insurance is collectible or is stated as primary, *pro rata*, contributory, excess, contingent, or otherwise, unless the other insurance or self-insurance is specifically written as excess of this Policy; or

(3)    any defense, hold harmless, or indemnification that **you** are entitled to from any person or entity other than one of **you**.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 5
AMEND SECTION IV (B) FOR SETTLEMENT PERCENTAGE ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

|  |  |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, the second sentence of Section IV HOW CLAIMS WILL BE HANDLED (B) is amended to read in its entirety as follows:

If **you** refuse to consent to a settlement acceptable to the claimant in accordance with **our** recommendation, then, subject to **our** applicable Limits of Liability stated in the Declarations, **our** liability for such **Claim** will not exceed:

(1) the amount for which the **Claim** could have been settled plus **Claim Expenses** up to the date **you** refused to settle such **Claim** (the "Settlement Amount"); plus

(2) eighty percent (80%) of any **Damages** or **Claim Expenses** in excess of the Settlement Amount incurred in connection with the **Claim**.  The remaining twenty percent (20%) of **Damages** and **Claim Expenses** in excess of the Settlement Amount will be carried by **you** at **your** own risk and will be uninsured.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000036

ENDORSEMENT NO. 6

AMEND SECTION VII YOUR REPORTING OBLIGATIONS (A) FOR DESIGNATED TITLES ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, Section VII YOUR REPORTING OBLIGATIONS (A) is amended to read in its entirety as follows:

**(A)** If, during the **Policy Period** or any applicable Extended Reporting Period, any **Claim** is first made against **you**, as a condition precedent to any right to coverage under this Policy, **you** must give **us** written notice of the **Claim** as soon as practicable after the Chief Executive Officer, Chief Financial Officer, Risk Manager or General Counsel of any **Named Insured** has knowledge of such **Claim** and in no event later than:

(1) with respect to any **Claim** first made during the **Policy Period**, ninety (90) days after the Expiration Date of this Policy stated in the Declarations or any earlier cancellation or termination of this Policy; or

(2) with respect to any **Claim** first made during any applicable Extended Reporting Period, the expiration of such applicable Extended Reporting Period.

**Your** timely and sufficient notice of a **Claim** will be deemed timely and sufficient notice for all of **you** involved in the **Claim**. The notice must give full particulars of the **Claim**, including but not limited to: information about the act, error, or omission; the identity of all potential claimants and any of **you** involved; a description of the damages that resulted from the act, error, or omission; and the manner in which **you** first became aware of the act, error, or omission.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000037

ENDORSEMENT NO. 7

AMEND SECTION II GOVERNMENT REGULATORY EXCLUSION (J) WITH SUBLIMITS ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy Number: | MCR-10591-19 |
| Issued To: | eQHealth Solutions, Inc. |
| Issued By: | Homeland Insurance Company of New York |

In consideration of the premium charged:

(1)    Section II WHAT THIS POLICY EXCLUDES J. of this Policy is amended to read in its entirety as follows:

**(J)**    based upon or arising out of any **Claim** brought or maintained by, or on behalf of, or in the name or right of, or for the benefit of any local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal, including but not limited to any type of legal or equitable action or proceeding such agency, body, entity, or tribunal is entitled to bring as a regulator, receiver, trustee, liquidator, rehabilitator, or administrator; provided that this Exclusion will not apply to:

(1)    any **Claim** brought by a local, state, federal, or foreign administrative, governmental, or regulatory agency, body, entity, or tribunal (a "Governmental Claim"):

(a)    for **Antitrust Activity** by **you** or on **your** behalf in the performance of the **Managed Care Activity** provided by **you** or on **your** behalf;

(b)    for disciplinary proceedings initiated by a local or state administrative, governmental, or regulatory agency, body, entity, or tribunal against **you** as medical director of the **Named Insured** in connection with **Utilization Review**;

(c)    for an individual enrollee benefit dispute under a Medicare, Medicaid, or other health plan sponsored by the federal or state (including the District of Columbia) government;

(d)    where the administrative, governmental, or regulatory agency, body, entity, or tribunal is the payor for the **Managed Care Activity** provided by **you** or on **your** behalf; or

(e)    for a violation of the Health Insurance Portability and Accountability Act or any similar federal, state, or local law regulating the privacy of personally identifiable health information (hereinafter, a "HIPAA Violation") by **you** or on **your** behalf in the performance of a **Managed Care Activity**; or

(2)    **Claim Expenses** as a result of any Governmental Claim, other than a Governmental Claim described in paragraph (J)(1) of this endorsement;

(2)    Section III DEFINITIONS (F)(1) is amended to read in its entirety as follows:

    (1)    any fine, penalty, forfeiture, sanction, tax, fee, liquidated damages, or amount imposed by statute, rule, regulation, or other law; provided that **Damages** will include fines or penalties which **you** are legally obligated to pay as a result of a **Claim** for **Antitrust Activity** or a **Claim** for a "HIPAA Violation", if such fine or penalty is insurable under the **Law Most Favorable to Insurability**;

(3)    **Our** maximum limit of liability for all **Damages** and all **Claim Expenses** from each **Claim** or **Related Claims** for any "HIPAA Violation" shall be $5,000,000, which amount shall be part of, and not in addition to, the Each Claim Limit of Liability stated in ITEM 3(A) of the Declarations. **Our** maximum limit of liability for all **Damages** and all **Claim Expenses** from all **Claims** and all **Related Claims** for "HIPAA Violations" shall be $5,000,000, which amount shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations.

(4)    **Our** maximum limit of liability for all **Claim Expenses** from each **Claim** or **Related Claims** for any Governmental Claim other than a Governmental Claim described in paragraph (J)(1) of this endorsement, shall be $5,000,000, which amount shall be part of, and not in addition to, the Each Claim Limit of Liability stated in ITEM 3(A) of the Declarations.  **Our** maximum limit of liability for all **Claim Expenses** from all **Claims** and all **Related Claims** for Governmental Claims other than Governmental Claims described in paragraph (J)(1) of this endorsement shall be $5,000,000, which amount shall be part of, and not in addition to, the Policy Aggregate Limit of Liability stated in ITEM 3(B) of the Declarations.

All other terms, conditions and limitations of this Policy shall remain unchanged.

ENDORSEMENT NO. 8
AMEND INSURED PERSON TO INCLUDE DULY AUTHORIZED TO PERFORM MANAGED CARE ACTIVITIES
ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, subparagraph (2) of the term "**Insured Person**", as defined in Section III DEFINITIONS (G) of this Policy, is amended to read in its entirety as follows:

(2)      any natural person duly authorized by the **Named Insured** to perform **Managed Care Activities**,

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000040

ENDORSEMENT NO. 9
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, Inc. |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged:

(1)     The term "**You** and **your**," as defined in Section III DEFINITIONS of this Policy, is amended to include the entity(ies) listed in the schedule below (each an "Additional Insured"), but only with respect to any **Claim** for any act, error, or omission committed or allegedly committed by the **Named Insured** or any **Insured Person** in the performance of any **Managed Care Activity** on or after the Retroactive Date set forth opposite the name of each such Additional Insured. ITEM 5 of the Declarations shall be deemed amended accordingly.

| Additional Insured | Retroactive Date |
|---|---|
| Illinois Department of Healthcare and Family Services | 08.10.2012 |
| State of Mississippi Division of Medicaid | 08.10.2012 |
| State of Florida Agency for Health Care Administration | 08.10.2012 |
| Louisiana Department of Health & Human Services | 08.10.2012 |
| Louisiana Centers for Medicaid & Medicare | 08.10.2012 |

(2)     No coverage will be available under this Policy for **Damages** or **Claim Expenses** for any **Claim** against an Additional Insured for any actual or alleged act, error, or omission by such Additional Insured or by any employee, director, officer, trustee, member of the board of managers, governor, medical director, or volunteer of such Additional Insured or any functional equivalent thereof.

(3)     In accordance with Section V LIMITS OF LIABILITY AND RETENTION (F) of this Policy, the Additional Insured will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to each **Claim** for which this endorsement provides coverage. **Our** obligation to make any payment under this  endorsement for any **Claim** will be excess of the Retention.  If the Additional Insured is unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on the Additional Insured's behalf.

(4)     It is understood and agreed that the Additional Insured(s) share in the applicable Limits of Liability set forth in ITEM 3 of the Declarations.

Additional Premium charged for this Endorsement: N/A

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-41044-09-14                                                                      Page 1 of 1

HOMELAND_000041

ENDORSEMENT NO. 10

ADDITIONAL INSURED WITH EXCLUSION (C) CARVEBACK FOR CUSTOMER CLAIM ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

|           |                                     |
|-----------|-------------------------------------|
| Policy No. | MCR-10591-19                       |
| Issued to | eQHealth Solutions, Inc.            |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged:

(1)     The term "**You** and **your**," as defined in Section III DEFINITIONS of this Policy, is amended to include the entity(ies) listed in the schedule below (each an "Additional Insured"), but only with respect to any **Claim** for any act, error, or omission committed or allegedly committed by the **Named Insured** or any **Insured Person** in the performance of any **Managed Care Activity** on or after the Retroactive Date set forth opposite the name of each such Additional Insured. ITEM 5 of the Declarations shall be deemed amended accordingly.

| Additional Insured | Retroactive Date |
|--------------------|------------------|
| The West Virginia Medical Institute, Inc. dba Quality Insights | 03.09.2015 |

(2)     No coverage will be available under this Policy for **Damages** or **Claim Expenses** for any **Claim** against an Additional Insured for any actual or alleged act, error, or omission by such Additional Insured or by any employee, director, officer, trustee, member of the board of managers, governor, medical director, or volunteer of such Additional Insured or any functional equivalent thereof.

(3)     Section II WHAT THIS POLICY EXCLUDES (C) of this Policy is amended to read in its entirety as follows:

    **(C)**     based upon or arising out of any allegation or demand made:

        (1)     by, or on behalf of, or in the name or right of, or for the benefit of any of **you**; or

        (2)     by, or on behalf of, or in the name or right of, or for the benefit of any prospective, current, or former owner of any legal, security, equity, or other interest in any **Named Insured**, in connection with such owner's interest in the **Named Insured**;

    provided that this Exclusion (C) will not apply to:

        (a)     any **Claim** brought by an **Insured Person** in his or her capacity as a participant in a health care, consumer directed health care, behavioral health, prescription drug, dental or vision plan administered by the **Named Insured**;

        (b)     **Claim Expenses** as a result of any **Claim** brought by an **Insured Person** on behalf of the federal government as a *qui tam* action alleging violations of the

HOMELAND_000042

False Claims Act of 1863; or

(c)    any **Claim** brought by an Additional Insured, if such Additional Insured:

    (i)    is a customer of the **Named Insured** and brings such **Claim** in its capacity as a customer of the **Named Insured** without the solicitation, assistance, participation, or intervention of the **Named Insured** or any **Insured Person**; and

    (iii)    is not a defendant or party against whom relief or recovery is sought in any **Claim** brought by a third party arising out of the same acts, errors or omissions giving rise to the Additional Insured's **Claim** as a customer of the **Named Insured**;

(4)    In accordance with Section V LIMITS OF LIABILITY AND RETENTION (F) of this Policy, the Additional Insured will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to each **Claim** for which this endorsement provides coverage. **Our** obligation to make any payment under this endorsement for any **Claim** will be excess of the Retention.  If the Additional Insured is unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on the Additional Insured's behalf.

(5)    It is understood and agreed that the Additional Insured(s) share in the applicable Limits of Liability set forth in ITEM 3 of the Declarations.

Additional Premium charged for this Endorsement: <Additional Premium>

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-41044A-09-14

HOMELAND_000043

ENDORSEMENT NO. 11

AMEND CONDITION (E) (2) CANCELLATION BY NAMED INSURED FOR PRO RATA ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on January 16, 2019, forms part of:

| | |
|---|---|
| Policy Number: | MCR-10591-19 |
| Issued To: | eQHealth Solutions, Inc. |
| Issued By: | Homeland Insurance Company of New York |

In consideration of the premium charged, the second sentence of Section VIII GENERAL CONDITIONS (E) (2) of this Policy is amended to read in its entirety as follows:

If the first **Named Insured** cancels this Policy, the earned premium will be computed *pro rata*.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-41045-01-12

Page 1 of 1

ENDORSEMENT NO. 12
AMEND DECLARATION FOR ADMINISTRATIVE CHANGES ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on November 1, 2019, forms part of:

Policy Number:  MCR-10591-19

Issued To:  eQHealth Solutions, Inc.

Issued By:  Homeland Insurance Company of New York

In consideration of the premium charged, the following item(s) on the Declarations to this Policy:

| | |
|---|---|
| [ ] | Policy Number |
| [X] | ITEM 1. First Named Insured (Name) |
| [ ] | ITEM 1. First Named Insured (Principal Address) |
| [ ] | ITEM 2(a) Inception Date |
| [ ] | ITEM 2(b) Expiration Date |
| [ ] | ITEM 5. Retroactive Date |
| [ ] | ITEM 7. Extended Reporting Period |
| [ ] | ITEM 9. Policy Form and Endorsements Attached at Issuance |

is/are amended as follows:

eQHealth Solutions, LLC

Premium change for the above amendment(s):

 [X] No change          [ ] Additional Premium          [ ] Return Premium

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000045

ENDORSEMENT NO. 13
DELETE AN ENDORSMENT

This Endorsement, which is effective at 12:01 a.m. on November 1, 2019, forms part of:

Policy Number:   MCR-10591-19

Issued To:          eQHealth Solutions, LLC

Issued By:          Homeland Insurance Company of New York

In consideration of the premium charged, Endorsement Number 9 to this Policy is deleted in its entirety.

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000046

ENDORSEMENT NO. 14
ADDITIONAL INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on November 1, 2019, forms part of:

Policy No.    MCR-10591-19
Issued to     eQHealth Solutions, LLC
Issued by     Homeland Insurance Company of New York

In consideration of the premium charged:

(1)    The term "**You** and **your**," as defined in Section III DEFINITIONS of this Policy, is amended to include the entity(ies) listed in the schedule below (each an "Additional Insured"), but only with respect to any **Claim** for any act, error, or omission committed or allegedly committed by the **Named Insured** or any **Insured Person** in the performance of any **Managed Care Activity** on or after the Retroactive Date set forth opposite the name of each such Additional Insured. ITEM 5 of the Declarations shall be deemed amended accordingly.

| Additional Insured | Retroactive Date |
|---|---|
| Illinois Department of Healthcare and Family Services | 08.10.2012 |
| State of Mississippi Division of Medicaid | 08.10.2012 |
| State of Florida Agency for Health Care Administration | 08.10.2012 |
| Louisiana Department of Health & Human Services | 08.10.2012 |
| Louisiana Centers for Medicaid & Medicare | 08.10.2012 |
| PHMH, LLC | 11.01.2019 |
| American Healthcare Review, Inc. | 11.01.2019 |

(2)    No coverage will be available under this Policy for **Damages** or **Claim Expenses** for any **Claim** against an Additional Insured for any actual or alleged act, error, or omission by such Additional Insured or by any employee, director, officer, trustee, member of the board of managers, governor, medical director, or volunteer of such Additional Insured or any functional equivalent thereof.

(3)    In accordance with Section V LIMITS OF LIABILITY AND RETENTION (F) of this Policy, the Additional Insured will be responsible for payment in full of the amount stated as the Retention in the Declarations, which will apply to each **Claim** for which this endorsement provides coverage. **Our** obligation to make any payment under this endorsement for any **Claim** will be excess of the Retention. If the Additional Insured is unable or unwilling to pay the full amount of the Retention, the **Named Insured** will be responsible for payment in full of the Retention on the Additional Insured's behalf.

(4)    It is understood and agreed that the Additional Insured(s) share in the applicable Limits of Liability set forth in ITEM 3 of the Declarations.

HPE-41044-09-14                                                                                    Page 1 of 1

**HOMELAND_000047**

Additional Premium charged for this Endorsement: N/A

All other terms, conditions and limitations of this Policy shall remain unchanged.

HOMELAND_000048

ENDORSEMENT NO. 15
ADDITIONAL NAMED INSURED ENDORSEMENT

This Endorsement, which is effective at 12:01 a.m. on November 1, 2019, forms part of:

| | |
|---|---|
| Policy No. | MCR-10591-19 |
| Issued to | eQHealth Solutions, LLC |
| Issued by | Homeland Insurance Company of New York |

In consideration of the premium charged, the term "**Named Insured**" as defined in Section III DEFINITIONS of this Policy, is amended to include the entity(ies) scheduled below.  With respect to such entity(ies) and the **Insured Persons** thereof, the applicable Retroactive Date shall be the Retroactive Date set forth opposite the name of each such entity, and ITEM 5 of the Declarations shall be deemed amended accordingly.

| Entity | Retroactive Date |
|---|---|
| eQHealth QIU, Inc. | 11.01.2019 |

Additional Premium charged for this Endorsement: N/A

All other terms, conditions and limitations of this Policy shall remain unchanged.

HPE-41001-04-11

Page 1 of 1

HOMELAND_000049