## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

**EQHEALTH ADVISEWELL, INC.**　　　　　　　　　　**CIVIL ACTION**
**f/k/a EQHEALTH SOLUTIONS, INC.**

**VERSUS**

**NO. 22-50-BAJ-EWD**

**HOMELAND INSURANCE COMPANY**
**OF NEW YORK**

### RULING AND ORDER

Before the Court is the Motion to File Revised Second Amended Complaint for Damages ("Motion"), filed by eQHealth AdviseWell, Inc. ("Plaintiff").[1] The Motion, which is untimely under the Scheduling Order,[2] is opposed by Defendant Homeland Insurance Company of New York ("Homeland").[3] Because Plaintiff has not shown good cause to revise the Scheduling Order under Fed. R. Civ. P. 16 to assert additional facts in its Complaint based on information Plaintiff had years before suit was filed, the Motion will be denied.

**I.　BACKGROUND**

Plaintiff provides "medical management services" to commercial and governmental entities. This suit involves an alleged breach of an Errors and Omissions ("E&O") insurance policy issued by Homeland to Plaintiff. Under Plaintiff's contract with Florida's Agency for Health Care Administration ("AHCA"), Plaintiff had to determine whether Florida Medicaid patients could be treated outside of Florida.[4] If so, the patient's out-of-state treatment cost would be borne by AHCA as part of Medicaid benefits available to Florida residents. AHCA and Brookhaven Hospital, a provider in Tulsa, Oklahoma, entered into an agreement for the care of Florida resident B.N.[5]

---

[1] R. Doc. 98 and *see* reply at R. Doc. 108. Plaintiff filed its First Amended Complaint in compliance with the Court's briefing order to correct deficiencies in its citizenship allegations. R. Docs. 28-31.
[2] R. Doc. 69.
[3] R. Doc. 100.
[4] *See* the contract between Plaintiff and AHCA at R. Doc. 100-7, p. 11.
[5] R. Docs. 100-16 and 100-17.

because Plaintiff says that it mistakenly determined that B.N. was permitted to receive treatment at Brookhaven.[6] According to Plaintiff, Brookhaven ultimately demanded payment for the care of B.N. Plaintiff paid $262,500 in settlement with Brookhaven,[7] for which Plaintiff says Homeland owes coverage under the E&O policy. Homeland has denied insurance coverage for the claim on various bases and the parties have filed cross-motions involving the question of coverage (among others).[8]

As relevant to this Motion, the E&O policy is a "claims made" policy. In its First Amended Complaint, Plaintiff alleged that it provided a "written 'claim' triggering Homeland's duty to defend" on June 17, 2019.[9] Plaintiff now seeks amendment claiming that it has learned through Homeland's responses to discovery that Plaintiff reported the claim in writing to Homeland on May 3, 2019—earlier than originally alleged.[10] Homeland argues that this reporting involved the transmission of a letter from Brookhaven, dated February 28, 2019, demanding arrangements for B.N.'s care and a written timeline. Plaintiff also now seeks to assert that, to the extent Homeland claims it did not receive the February 28, 2019 letter that was purportedly attached to, and referenced in, the May 3, 2019 correspondence Homeland did receive, Homeland failed to fulfill its contractual duty to further investigate why Homeland did not receive the letter.[11]

II. **LAW AND ANALYSIS**

A. **Applicable Legal Standards**

Fed. R. Civ. P. 15(a) provides that leave to amend pleadings "shall be freely given when justice so requires." As acknowledged by all parties, because Plaintiff seeks leave to amend its

---

[6] R. Doc. 98-1, pp. 1-2.
[7] R. Doc. 31, ¶ 40.
[8] R. Docs. 112 & 123.
[9] See R. Doc. 98-1, p. 3, Plaintiff's Responses to Requests for Admissions at R. Doc. 100-28, p. 3, the First Amended Complaint at R. Doc. 31, ¶¶ 5, 24-29, and the policy at R. Doc. 100-1.
[10] R. Doc. 98-3, ¶¶ 25-38.
[11] *Id.*

Complaint after the deadline for filing amendments and adding parties has passed,[12] the Court must first analyze the Motion under Fed. R. Civ. P. 16. "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[13] "The Fifth Circuit has held that Rule 16 gives trial courts 'broad discretion to preserve the integrity and purpose of the pretrial order' in making the 'good cause' determination."[14] "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'"[15] In determining "good cause," a court must consider the following four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.[16] If the movant demonstrates good cause, then the more liberal standard of Fed. R. Civ. P. 15(a) applies; however, "leave to amend is by no means automatic" and the "decision lies within the sound discretion of the district court."[17]

### B. Plaintiff Has Not Shown Good Cause to Amend Under the Fed. R. Civ. P. 16 Factors

The Motion was filed nearly fourth months after the expiration of the amendment deadline and three weeks after the close of fact discovery.[18] "The first factor under Rule 16(b)'s good-cause

---

[12] R. Doc. 98-1, pp. 3-5, R. Doc. 100, p. 14. *See also*, R. Doc. 33, p. 5 (proposing 5/30/22 as the deadline to add parties and amend pleadings), R. Doc. 35 (noting a scheduling order would be issued with the parties' proposed deadlines), and R. Doc. 69 (scheduling order with deadline to add parties and amend pleadings as "EXPIRED").
[13] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003).
[14] *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 15-1455, 2017 WL 119633, at *3 (E.D. Tex. Jan. 12, 2017), citing *Geiserman v. MacDonald,* 893 F.2d 787, 790 (5th Cir. 1990) (quoting *Hodges v. United States,* 597 F.2d 1014, 1018 (5th Cir. 1979)).
[15] *S&W Enterprises, L.L.C.*, 315 F.3d at 535, quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990).
[16] *S&W Enterprises, L.L.C.*, 315 F.3d at 536 (citations omitted).
[17] *Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted).
[18] R. Doc. 98. The parties selected the amendment deadline. *See* the Joint Status Report at R. Doc. 33, p. 5. The minute entry of the parties' 3/17/22 conference with the Court reflects that the Scheduling Order was to be entered with the

3

standard is the justification for the delay, which courts within this circuit have described as the 'most important factor.'"[19] As explanation for its failure to timely seek amendment Plaintiff states: "Until written discovery responses to eQH's discovery were submitted by Homeland on July 29, 2022, eQH did not know that additional reasons exist for arguing that coverage under Homeland's policy was triggered.[20] Plaintiff contends that, on April 30, 2019, its insurance broker, Marsh USA, Inc., submitted a "First Report of Loss" (hereinafter, "Notice of Circumstances") to Homeland on Plaintiff's behalf.[21] The Notice of Circumstances allegedly attached a timeline regarding B.N. that was created by Plaintiff.[22] The timeline referred to, and the Notice of Circumstances allegedly attached, a February 28, 2019 letter from Brookhaven to AHCA, on which Plaintiff was copied, demanding that action be taken regarding B.N.'s care.[23] Plaintiff alleges that Homeland's May 3, 2019 internal correspondence and May 7, 2019 claim notes show that Homeland received the Notice of Circumstances and the timeline, and was aware (or should have been aware) of the letter.[24]

---

parties' proposed deadlines. R. Doc. 35, p. 4. The 5/30/22 amendment deadline had expired by the time the Scheduling Order was ultimately entered. R. Doc. 69. The discovery deadline was 8/31/22. *Id.*

[19] *Drummond v. Cajun Valve Servs., LLC,* No. 20-37, 2022 WL 1479954, at *3 (S.D. Miss. May 10, 2022), and *see id.,* citing *Ryan v. U.S. Dep't of Commerce,* No. 18-558, 2021 WL 3134909, at *2 (S.D. Miss. July 23, 2021) ("Courts within the Fifth Circuit have described the explanation for needing more time as the most important[t] factor."); *Antonio v. Acadian Ambulance Servs. Inc.*, No. 14-354, 2015 WL 12941882, at *1 (S.D. Miss. July 29, 2015) ("the first factor alone may be dispositive, outweighing the other three factors"); *Elvir v. Trinity Marine Prod. Inc.*, 327 F.R.D. 532, 550 (M.D. La. 2018) *aff'd,* No.16-814, 2018 WL 4628320 (M.D. La. Sept. 27, 2018) ("most important factor"); *Allergan, Inc.,* 2017 WL 119633, at *3 ("The most important factor bearing on the 'good cause' inquiry under Rule 16(b)(4) is whether the party seeking to modify the scheduling order can show that it has been diligent in pressing its claims but despite its diligence could not reasonably have met the scheduling deadline"); *O'Connor v. Cory*, No. 16-1731, 2018 WL 5848860, at *4 (N.D. Tex. Nov. 8, 2018) ("most important factor"); *Williams v. Waste Mgmt, Inc.*, No. 16-2943, 2018 WL 3803917, at *2 (N.D. Tex. June 29, 2018 ("lack of diligence in timely amending his pleadings is paramount").").

[20] R. Doc. 98-1, p. 5.

[21] R. Doc. 98-1, pp. 5-7 and R. Doc. 98-7, p. 1 (April 30, 2019 email from Marsh stating: "Attached please find correspondence that will serve as a First Report of Loss," but notably, also says: "NOTE NO CLAIM HAS BEEN MADE TO THE INSURED SO THEY ARE REPORTING THIS AS A CIRCUMSTANCE THAT COULD RISE TO A CLAIM") (emphasis in original).

[22] R. Doc. 98-1, p. 5, citing the timeline at R. Doc. 98-5. The timeline produced by Homeland to Plaintiff is undated (R. Doc. 98-5), but a substantially similar version was circulated among Plaintiff's employees (Dennis Hardy, Liz Willson, Glen Golemi, and Vicky Ducworth) and its counsel (Tom Crabb) on 3/20/19. R. Doc. 100-3.

[23] R. Doc. 98-5, p. 1 (*see* the last entry on the page: "2/28/19 Provider sent a letter to AHCA Administrator Beth Kidder **(attached)**, eQHealth Solutions received a copy of the letter,") (emphasis added); R. Doc. 98-6 (2/28/19 letter from Brookhaven to AHCA.

[24] R. Doc. 98-7, p. 4 (Homeland 5/3/19 internal correspondence referencing attachments to Plaintiff's Notice of

Plaintiff, therefore, seeks to amend the Complaint to allege that it filed a claim on May 3, 2019—rather than the June 17, 2019 date originally alleged.[25]

According to Plaintiff, while Homeland received the timeline, Homeland claims it did not receive the February 28, 2019 letter.[26] However, Plaintiff argues that, even if Homeland did not receive the letter, Homeland's internal correspondence shows that Homeland was aware that a letter was supposed to be attached to the documents Plaintiff submitted but Homeland failed to take steps to obtain the letter. Plaintiff alleges that Homeland was under a duty to investigate why it did not receive the February 28, 2019 letter, and that Homeland's failure to investigate, "constitutes a waiver of all powers of privileges which a reasonable search would have uncovered," and "[c]onstructive notice of the content of the letter should therefore be deemed to exist."[27] Furthermore, Plaintiff contends that Homeland's failure to investigate was not known to Plaintiff until it received Homeland's July 29, 2022 discovery responses, and "[t]hus, the first factor of the FRCP 16 'good cause' is met."[28]

---

Circumstances that were not received) and R. Doc. 98-8, pp. 10-11 (Homeland 5/7/19 claim file notes incorporating the timeline which references the 2/28/19 letter). According to Homeland, what occurred on 5/7/19 was that representatives of Plaintiff and Homeland had a conference call to discuss the Notice of Circumstances and the timeline. R. Doc. 100, p. 7 and *see* R. Doc. 100-5, p. 10 (Homeland file notes referencing the 5/7/19 phone conference with Plaintiff regarding a notice of potential claim and timeline).

[25] Plaintiff alternately asserts 5/3/19 and 5/7/19 as the new date(s) on which it reported the claim. *See* proposed Amended Complaint at R. Doc. 98-3, ¶¶ 25-29 (alleging 5/3/19 as the report date) and R. Doc. 98-1, p. 3 ("As part of Homeland's discovery responses, it has become apparent that a separate and distinct coverage-triggering written notification of claim also took place earlier [than the June 17, 2019 one originally relied upon by Plaintiff], on May 7, 2019 Thus, eQH seeks to amend its Complaint to allege that the May 3, 2019 written material triggered Homeland's coverage both as a direct notice of claim and as notice of a 'related claim.'"); *see also*, 98-1, p. 5 ("Homeland's discovery responses show that a coverage-triggering written notification of claim took place earlier, on May 7, 2019, when it submitted a written timeline concerning the underlying claim to Homeland."). The filing and timing of an adequate claim is at issue in the pending Motion for Summary Judgment (R. Doc. 112), as Homeland disputes that an adequate claim was made under the policy to trigger coverage and also contends that Plaintiff voluntarily settled AHCA's demand on May 16, 2019, before making an adequate claim to Homeland (which Plaintiff disputes, *see, e.g.,* R. Doc. 108, pp. 2-4). This Ruling does not address the underlying merits of the dispute.

[26] R. Doc. 98-1, p. 6.

[27] R. Doc. 98-1, pp. 8-9, citing, in pertinent part, *Foret v. Terrebonne Towing Co., Inc.,* 632 So.2d 344, 347 (La. App. 1 Cir. 1993) and *Campo v. Correa*, 2001-2707 (La. 6/21/02), 828 So.2d 502. *See also* Plaintiff's reply memorandum at R. Doc. 108, p. 7.

[28] R. Doc. 98-1, pp. 5-9. Homeland's discovery responses are not in the record.

5

In response, Homeland contends that it did not receive the February 28, 2019 letter until Plaintiff's December 2019 formal tender of a claim.[29] Homeland also argues that its discovery production to Plaintiff of the timeline and the letter[30] is not grounds justifying Plaintiff's delay in seeking amendment because the timeline was created *by Plaintiff;* Plaintiff was copied on the February 28, 2019 letter from Brookhaven to AHCA; and Plaintiff produced both these documents with its June 20, 2022 discovery responses to Homeland so Plaintiff had these documents and was aware, or should have been aware, of the timeline and the letter well before the amendment deadline expired.[31] Furthermore, Homeland contends that Plaintiff was also aware that the April 30, 2019 Notice of Circumstances that Plaintiff's broker submitted to Homeland did not attach a copy of the February 28, 2019 letter because Plaintiff's Vice President Christine G. Gatlin was copied on the email,[32] yet Plaintiff failed to insure that Homeland received the information.

Plaintiff seeks to amend its Complaint to change the date it reported to Homeland the claim at issue. Plaintiff's argument--that it did not know the correct date until it received discovery responses from Homeland--fails since *Plaintiff* originally provided the information (some of which was prepared *by Plaintiff*) to Homeland.[33] For years, Plaintiff has had the information (both what was contained in the timeline and the February 28, 2019 letter) and the knowledge that in May 2019 Homeland received or should have received that information, which Plaintiff now says constitutes

---

[29] R. Doc. 100, pp. 15-16 and R. Doc. 100-33 (9/9/22 correspondence between counsel: "I do not have any record that the 2/28/19 Brookhaven letter specifically was produced to Homeland on 5/7/19. Instead, the records I have is that the letter was first provided to Homeland as an attachment to eQHealth's December 12, 2019 tender of the AHCA claim") and *see* R. Doc. 100-6 (12/12/19 tender of claim by Plaintiff to Homeland) and R. Doc. 100-8 (2/28/19 letter).

[30] Homeland also addresses a 3/19/19 email from a representative of AHCA to Plaintiff alleging errors made by Plaintiff. R. Doc. 100, p. 15 and *see* R. Doc. 100-11. While Plaintiff's proposed second amended complaint and reply brief refer to this email (R. Doc. 98-3, ¶ 23, and R. Doc. 108, p. 1), Plaintiff does not address the relevance of the email substantively in brief.

[31] R. Doc. 100, pp. 15-16 and *see* R. Doc. 100-3 (3/20/19 email with timeline circulated among Plaintiff's employees) and R. Doc. 98-6 (2/28/19 Brookhaven letter to AHCA with a copy to Plaintiff's representatives at p. 4). Plaintiff's applicable discovery responses are not in the record.

[32] R. Doc. 100, p. 16 and *see* R. Doc. 98-7, pp. 1-2.

[33] R. Doc. 108, p. 1 (noting that the timeline attached to the 4/30/19 Notice of Circumstances was "prepared by eQHealth's Dennis Hardy ….").

6

earlier notice of the claim at issue.[34] Under these facts, there is no viable justification for Plaintiff's delay as it relates to the failure to originally allege the correct date it first reported the claim at issue to Homeland.[35] For the same reasons, the fact that Plaintiff waited so long to seek leave to amend, despite having the information it now uses as a basis for the amendments more than two years before suit was filed, also weighs against a finding of importance.[36]

Consideration of prejudice also weighs against Plaintiff.  As noted by Homeland, Plaintiff's amendments raise new factual allegations that would require additional discovery, which was closed before the Motion was filed, resulting in additional costs to Homeland. Further, even if the additional costs to Homeland were not prejudicial, a continuance to conduct additional discovery is not

---

[34] Plaintiff's claim that Homeland breached its duty by failing to find out why the February 28, 2019 letter was not attached to the Notice of Circumstance is similarly unavailing. The essence of Plaintiff's argument in favor of amendment now is that Homeland should be held to higher standard regarding knowledge of the February 28, 2019 letter than Plaintiff, although Plaintiff also knew or should have known about the letter that Plaintiff now claims constitutes earlier notice of the claim, but failed to reference the letter in either the original or First Amended Complaints. Although Plaintiff states generally that an insurer's failure to investigate when it has notice of facts that give rise to a duty may result in "waiver of all powers or privileges a reasonable search would have uncovered" (R. Doc. 98-1, p. 8), the cases cited by Plaintiff in support of this point are distinguishable. *See, Jeffries v. Prime Ins. Co.*, 2021-161 (La.App. 3 Cir. 11/3/21), 334 So.3d 761, 777 (noting that "an insurer's failure to obtain a reservation of rights to contest coverage before assuming the defense of a claim can result in the waiver of the right to contest coverage if the insurer assumes the defense having knowledge of facts indicating a coverage defense may exist."), citing *Rivers v. Daigle*, 16-805 (La.App. 3 Cir. 2/1/17), 210 So.3d 815, 817; *Swain for and on behalf of Swain v. Life Ins. Co. of Louisiana*, 537 So.2d 1297 (La.App. 2 Cir. 1/18/89) (insurer can be estopped from denying coverage based on sound health exclusion if insured accepted premiums and issued life insurance policy without adequately determining status of insured's health when policy issued); *Foret v. Terrebonne Towing Co.,* 632 So.2d 344, 347 (La. App. 1 Cir. 1993), *writ denied,* No. 94-734 (La. 5/13/94), 637 So.2d 1067 (insurer may waive coverage defense when assuming or continuing the defense without a reservation of rights if facts put insurer on notice of the defense).

[35] *See Galbraith v. LeBlanc,* No. 17-486, 2020 WL 5809963, at *3 (M.D. La. Mar. 25, 2020) (denying motion for leave to amend the complaint when the plaintiff failed to provide an adequate explanation for his failure to timely move for leave to amend) and *Elivir*, 327 F.R.D. at 548 (denying motion for leave to add additional defendants in part because the first factor weighed heavily against the plaintiffs in light of their failure to provide sufficient explanation for their untimely motion). *See also Matamoros v. Cooper Clinic*, No. 14-442, 2015 WL 4713201 at *2 (N.D. Tex. Aug. 7, 2015) ("Mere inadvertence on the part of the movant, and the absence of prejudice to the nonmovant, are insufficient to establish "good cause."); *Rios* v. *City of Conroe,* 674 Fed.Appx. 366, 368 (5th Cir. 2016) ("Mere inadvertence is insufficient to constitute good cause under Rule 16, even if that inadvertence is coupled with lack of prejudice to the nonmovant."); *De Franceschi v. BAC Home Loans Servicing, L.P.*, 477 Fed. Appx. 200, 204 (5th Cir. 2012) ("After an examination of the record, which reveals that the plaintiffs knew or should have known of the facts relevant to their amendment before the scheduling deadline, we conclude that the district court did not err in denying leave to amend.").

[36] *Galbraith,* 2020 WL 5809963, at *3.

available given the Court's recent summary judgment briefing order, which sets dispositive motion deadlines that may not be extended.[37]

After conducting the applicable four-factor analysis, Plaintiff has not shown good cause to modify the Scheduling Order to permit the filing of a second amended complaint.[38] All four factors weigh against Plaintiff, most significantly the lack of a viable explanation for the delay.[39] "The good-cause standard will not be satisfied if the court concludes that the party seeking relief (or that party's attorney) has not acted diligently in compliance with the schedule."[40] Because Plaintiff has failed to show good cause under the Fed. R. Civ. P. 16 factors, the Fed. R. Civ. P. 15 factors need not be reached.[41]

### III. CONCLUSION

Plaintiff has failed to show good cause for leave under Fed. R. Civ. Proc. 16(b)(4) and will not be permitted leave to modify the Scheduling Order to allow for the filing of a second amended complaint. Plaintiff has not offered a sufficient justification for its delay in seeking to amend because it had the information on which it premises the amendments for years before this suit was filed. The delay also belies the importance of the amendments. Further, Homeland would be prejudiced by having to litigate this case based on new factual allegations, and a continuance of the applicable deadlines is not available considering the Court's recent summary judgment briefing order.

---

[37] R. Doc. 122, p. 2 ("Discovery is now closed… the Court determines that the interests of justice are best served by requiring the parties to channel their arguments into a *single* summary judgment proceeding based on the now-closed evidentiary record, and an uncluttered docket," "There will be no modifications to the deadlines…set forth herein.") (emphasis in original).
[38] 315 F.3d 533, 536 (5th Cir. 2003).
[39] *Elvir,* 327 F.R.D. at 550, citing *Allergan, Inc.,* 2017 WL 119633 at *3.
[40] 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1522.2 (3d ed. April 2022 Update) (citing numerous cases).
[41] *Galbraith,* 2020 WL 5809963, at *4, citing *Elvir,* 327 F.R.D. at 550 ("Because Plaintiffs have not shown that good cause exists to modify the Scheduling Order under Rule 16(b) … the Rule 15 analysis is inapplicable.").

Accordingly,

**IT IS ORDERED** that the Motion to File Revised Second Amended Complaint for Damages[42] filed by Plaintiff eQHealth AdviseWell, Inc., is **DENIED.**

Signed in Baton Rouge, Louisiana, on May 2, 2023.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[42] R. Doc. 98.